(No. 42786.—

THOMAS M. FLYNN *et al.,* Appellees, *vs.* EDMUND KU-CHARSKI *et al.*—(HAROLD A. AHLBECK *et al.,* Appellants.)

*Opinion filed March 17, 1970.—Rehearing denied May 26, 1970.*

EDWARD V. HANRAHAN, State's Attorney, of Chicago, for appellants County Collector of Cook County and township collectors of all the townships located in Cook County.

DON H. REUBEN and LAWRENCE GUNNELS, both of Chicago, (KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of counsel,) for appellant HAROLD A. AHLBECK.

DEMUNNO & SPINA, of Elmwood Park, for appellant ROY LARSEN.

WILLIAM J. HARTE and KEVIN M. FORDE, both of Chicago, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In a class action brought by taxpayers in the city of Chicago, the circuit court of Cook County held unconstitutional section 36.6 of the Fees and Salaries Act (Ill. Rev. Stat. 1967, ch. 53, par. 55.6) insofar as it relates to the commission allowed to township collectors in Cook County on account of taxes collected by them, and directed that all "property taxes in Cook County shall hereafter be collected by the Cook County Collector until further order of this Court." The defendants, who are the county collector of Cook County and the 30 township collectors in Cook County, together with certain townships and others who were granted leave to intervene, have appealed directly to this court.

A description of the statutory scheme for the collection of property taxes in Cook County is essential to an understanding of the issues in this case. There are no townships in the city of Chicago. In that portion of Cook County outside the city limits of Chicago, there are 30 townships. The boundaries of four of the townships, Berwyn, Cicero, Evanston, and Oak Park, are coterminous with the boundaries of cities or villages bearing the same names. There are two taxing bodies, Cook County and the Forest Preserve District of Cook County, that levy taxes on all property in Cook County. A third, The Metropolitan Sanitary District of Greater Chicago, levies taxes on all property in the city of Chicago and on some, but not all, of the remaining property in the county.

Taxpayers owning property in the city of Chicago are required to pay their taxes to the county collector, who is by section 21 of the Fees and Salaries Act authorized to deduct a commission of one and one-half percent on all money collected, except that he is allowed a commission of one percent on money "collected for incorporated cities, villages and other municipalities." In addition he is allowed three-fourths of one percent on money paid over to him by township collectors. (Ill. Rev. Stat. 1967, ch. 53, par. 39.) These commissions are deposited by the county collector in the general corporate fund of the county.

Taxpayers owning property in that part of Cook County lying outside of the city of Chicago, referred to by the parties as "suburban Cook County," may pay their taxes to the county collector with the same result so far as commissions are concerned. These taxpayers, however, have an alternative which is not available to taxpayers in the city of Chicago. They may pay their taxes to the township collector of the township in which their property is located. If they do so, the township collector is allowed a commission which is fixed by section 36.6 of the Fees and Salaries Act

at "2% of all moneys collected by him." That section provides that the township collector may retain a specified amount as his compensation, as well as his expenses if authorized. The section then continues: "After payment of the foregoing amounts to the town or district collector as compensation for his services, the excess of the commission allowed shall be paid into the town treasury, except that in townships comprised of only one village or city, the corporate limits of which are coextensive with the corporate limits of the township, the excess shall be paid into the village or city treasury." Ill. Rev. Stat. 1969, ch. 53, par. 55.6.

The controversy in this case centers upon the fact that in the case of taxes paid to the county collector, the commissions that are deducted for making the collections are deposited in the general corporate fund of Cook County, for the use and benefit of all residents of the county, whereas in the case of taxes paid to township collectors the excess of the two percent commission, over and above the salary and expenses of the collector, is turned over to the township and is used for local, rather than county-wide, purposes. The parties have stipulated: "The 30 Township Collectors in surburban Cook County collected more than 350 million dollars in taxes during the collection period of 1969. From these collections during 1969, Township Collectors deducted commissions in excess of 7 million dollars. This sum of 350 million dollars included $21,875,000 dollars in taxes levied by the County of Cook and commissions deducted from these taxes amounted to $437,500; and $3,500,000 in taxes levied by The Forest Preserve District with commissions of $70,000."

The amounts paid as commissions to township collectors in Cook County for 1967 and 1968 tax collections are shown as follows in the Report of the Governor's Revenue Study Committee, 1968-69, of which Simeon E. Leland was chairman:

COMMISSIONS PAID TO COOK COUNTY COUNTRY TOWNSHIP
COLLECTORS FOR 1967 AND 1966 TAX COLLECTIONS

|  | Year | |
| --- | --- | --- |
| Township | 1967 | 1966 |
| Barrington | $ 30,937 | $ 25,428 |
| Berwyn | 121,622 | 116,789 |
| Bloom | 274,856 | 248,852 |
| Bremen | 175,731 | 153,334 |
| Calumet | 65,379 | 62,038 |
| Cicero | 225,480 | 212,777 |
| Elk Grove | 286,011 | 249,275 |
| Evanston | 353,971 | 327,231 |
| Hanover | 58,439 | 49,773 |
| Lemont | 19,325 | 17,150 |
| Leyden | 430,537 | 396,652 |
| Lyons | 391,119 | 339,484 |
| Main | 513,254 | 461,893 |
| New Trier | 411,644 | 368,541 |
| Niles | 561,593 | 545,132 |
| Northfield | 261,357 | 223,216 |
| Norwood Park | 96,863 | 88,375 |
| Oak Park | 210,409 | 198,127 |
| Orland | 33,089 | 30,197 |
| Palatine | 161,124 | 146,706 |
| Palos | 73,045 | 63,545 |
| Proviso | 548,247 | 525,745 |
| Rich | 168,041 | 143,038 |
| River Forest | 67,276 | 60,028 |
| Riverside | 67,544 | 58,843 |
| Schaumberg | 98,486 | 84,739 |
| Stickney | 223,358 | 205,199 |
| Thornton | 466,204 | 424,429 |
| Wheeling | 358,482 | 323,291 |
| Worth | 369,671 | 325,207 |
| Total | $7,120,370 | $6,475,047 |

The same report points out that some of the townships actively solicit early payment of taxes to the township collectors, so that the townships will receive the benefit of the excess of the commissions. As has been indicated, the statute provides that in those townships whose boundaries are coterminous with those of cities or villages, the excess commissions are to be paid into the city or village treasury. In other instances, as shown by the intervening petition of Harold A. Ahlbeck, the Maine Township School District Treasurer, the excess commissions are turned over to local suburban school districts.

The complaint was filed by Thomas H. Flynn and Clare S. Harte, taxpayers in the city of Chicago, on behalf of themselves and all other taxpayers similarly situated. They allege that the property of a Chicago taxpayer is subject to tax by the following agencies: the County of Cook; the Forest Preserve District of Cook County; the Metropolitan Sanitary District of Greater Chicago; the City of Chicago; the Board of Education of the City of Chicago; Junior College District No. 508, and the Chicago Park District.

Count I of the complaint concerns the taxes levied by the County of Cook. It alleges that the method of collection is arbitrary, unreasonable and discriminatory in that the entire tax levied by the County of Cook upon property located in the City of Chicago, and collected from the plaintiffs and other Chicago taxpayers, inures to the benefit of all persons residing in Cook County, whereas only 98 percent of the tax levied by the County of Cook upon property located in the suburban townships which is collected through a township collector inures to the benefit of all persons residing in Cook County. The remaining two percent is used for township purposes and inures only to the benefit of those persons residing within the particular township. This method of collection, the complaint alleges, violates the uniformity provisions of the constitution of Illinois (art. IX, secs. 9 and 10), the due process clause of the constitution

of Illinois, and the due-process and equal-protection clauses of the fourteenth amendment to the constitution of the United States. Count II contains the same allegations with respect to the tax levy of the Forest Preserve District of Cook County which is similarly levied on a county-wide basis.

Count III alleges that the commissions charged by the county collector of Cook County and by the township collectors far exceed the cost of collection. Many of the issues raised by this count have not yet been disposed of in the trial court. In this opinion we are concerned only with the validity of the statute insofar as it permits certain taxpayers within Cook County to determine, by paying their taxes to one collection official rather than another, what governmental unit shall receive those taxes. The circuit court enjoined the township collectors from further collection of taxes by requiring that "All property taxes in Cook County shall hereafter be collected by the Cook County Collector until further order of this court." The court expressed no opinion as to whether the statutory commissions are confiscatory and illegal "insofar as they bear no relationship to the services rendered."

The case was heard in the trial court on motions by the defendants and intervenors to dismiss the complaint. The factual allegations of the complaint as to the existence of discrimination against the taxpayers of the city of Chicago are thus undisputed. The admitted discrimination is sought to be justified on two grounds. The first is that the "retention and use of the two percent commission for township purposes is a part of the spending process and does not violate the Illinois or Federal constitutions." The argument is that taxes throughout Cook County are based on uniform assessed valuations, that county-wide taxes are levied at equal rates, and that all taxpayers, both in Chicago and the suburban townships pay 100% of their tax bills, whether payment is made to a township collector or to the county

collector. "The 2% commission collected and retained by the township collectors is expended for public purposes within the County, *i.e.,* schools, public health, roads and bridges and general assistance in the townships." Therefore, it is argued, "The 2% commission is simply a statutorily predetermined method of *spending* tax revenues *after* .collection."

This argument of the defendants is ably and ingeniously designed to fit certain language used by this court in *Board of Library Directors* v. *City of Lake Forest,* 17 Ill.2d 277. There the court was confronted with a new manifestation of a recurrent problem stemming from the overlapping of townships with cities and villages. The township included a portion of the city, and both the city and the township maintained a public library. The statute provided that "where any city, * * * which levies a library tax, is wholly or partially located within a township which likewise levies a library tax, the township shall pay to such municipality the entire amount of the township library taxes, levied and collected on the property located in the portion of the township that lies in such municipality; and that the municipality, upon receipt of such funds from the township, shall reduce and abate, from the library tax which it has levied, a rate that will produce the amount received from the township." (17 Ill.2d at 278.) The statutory solution, which the court approved, followed the method that had been used in dealing with the similar problem created by overlapping townships and cities and villages with respect to road and bridge taxes, as the opinion of the court pointed out, citing *Peoria and Pekin Union Railway Co.* v. *People ex rel. Jaeger,* 144 Ill. 458, and *People ex rel. Roche* v. *Cairo and Thebes Railroad Co.,* 319 Ill. 118. (17 Ill.2d at 284.) The defendants' case is built upon the following quotation from the opinion of the court: "While the uniformity of levy and assessment is the inexorable command of the Illinois constitution, this same standard of uniformity is

not generally held to be applicable to the disposition of the tax after collection, [citation]. The rule to be gathered from the cases decided in States which likewise have the constitutional limitation of uniformity, is that lack of uniformity in the imposition of a tax is fatal to the levy, *but if the tax is imposed with equality and uniformity and collected for the public welfare, the rule does not apply to inequality of distribution.*" Italics supplied, 17 Ill.2d at 282.

Like the other cases involving duplicate township and municipal taxation, the problem presented in the library case was difficult, and the solution may not have achieved absolute equity among the taxpayers. But, as the court there stated: "The prohibition of the constitution is that one municipality may not force another to levy taxes to pay a debt which it did not incur *or for the corporate purpose of the other municipality. Such circumstances do not exist in the case at bar.*" (Italics supplied, 17 Ill.2d at 286.) Such circumstances *do* exist in the case now before us. The effect of the statute involved in the present case is to permit the taxpayers in suburban Cook County, by electing to pay their taxes to their township collectors, to divert to the specialized purposes of their units of local government, taxes that had been levied for the different corporate purposes of the county-wide taxing bodies.

We need not analyze critically the observation in the library case to the effect that the constitutional command of uniformity does not apply to inequality of distribution, for we are satisfied that collection of taxes rather than their distribution, is involved in this case. There has been no legislative attempt to characterize the system here assailed as a part of the spending process. Rather the statutory language makes it clear that what is involved is a diversion, in the process of collection, and as a part of the statutory machinery of collection, of taxes paid by the taxpayers of one governmental unit for the benefit of the taxpayers of another governmental unit. Moreover, we find it impossible

to accept the notion that the General Assembly would make a spending program designed for the benefit of the inhabitants of a unit of local government depend upon the fortuitous circumstance that taxes are paid to one tax collecting official rather than another.

The second ground upon which the statutory scheme of commissions on tax collections is sought to be sustained is thus stated by the defendants and intervenors: "Although appropriations and expenditures of tax revenues need not be justified as a matter of Constitutional law, there are here in fact many reasonable and valid considerations to support and justify the statutory scheme of distribution that plaintiffs assail (*Thorpe* v. *Mahin,* 43 Ill.2d 36, 45-46), not the least of which is that the townships are assured of a public fund to pay for vital and recurring local public needs. Without such a fund, the townships would be compelled either to seek a dole from the county treasurer for township purposes or to levy and collect taxes from township residents *in addition* to those they now pay."

Of course the county treasurer has no authority to grant "a dole" from county funds to any township to be used for township purposes, just as he has no authority to grant "a dole" from county funds to the city of Chicago to be used for city purposes. Indeed, this argument is a concession that the effect of the statutory provisions here involved is to divert a portion of the taxes levied by the county and other county-wide taxing agencies, before they reach the county treasury, and turn that portion over to other governmental units in order to reduce the amount of taxes they must levy. A similar scheme was held invalid by this court in *Board of Education* v. *Haworth* (1916), 274 Ill. 538.

The injustice and lack of constitutional uniformity would be no different under a legislative scheme of tax collection which required taxpayers in that part of Cook County outside of the city of Chicago to pay their taxes to the county collector, who would deduct a commission and

pay it into the county treasury, while taxpayers within the city of Chicago were permitted to pay their taxes to a city collector who would deduct a commission from taxes levied on a county-wide basis, and place it in the city treasury. And the fact that "without such a fund" the city would be compelled to levy and collect taxes from city residents *"in addition* to those they now pay," would not justify such a violation of the constitutional requirement of uniformity of taxation. See, *People ex rel. City of Danville* v. *Fox* (1910), 247 Ill. 402; *Town of Dixon* v. *Ide* (1915), 267 Ill. 445.

The judgment of the circuit court of Cook County is affirmed, and the cause is remanded to that court for further proceedings.

*Affirmed and remanded.*