(No. 47986.—

MICHAEL J. GOLDSTEIN *et al.,* Appellees, v. EDWARD J. ROSEWELL, County Treasurer, *et al.,* Appellants.

*Opinion filed December 3, 1976.*

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Sheldon Gardner, Deputy State's Attorneys, and Stuart D. Gordon, Assistant State's Attorney, of counsel), for appellants.

Sanford R. Gail and Fred I. Shandling, both of Chicago (Karaganis & Gail, Ltd., and Ardell, Shandling, Greenberg & Fohrman, Ltd., of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves the validity of the provision of section 21 of the inheritance and transfer tax act (Ill. Rev. Stat. 1973, ch. 120, par. 394) which authorizes the county treasurer to retain and pay into the county treasury 4% of all taxes paid to him for the State of Illinois under the Act. The suit was filed by two plaintiffs as a class action on behalf of all taxpayers of Illinois who reside outside of Cook County. It was brought against Edward J. Rosewell, county treasurer and *ex officio* county collector of Cook County, and the County of Cook. The circuit court of Cook County held that the withholding by the county treasurer of 4% of the amount of the tax collected constitutes fees and violates the provisions of article VII, section 9(a), of the Constitution of 1970. The order of the circuit court directed the county treasurer to segregate and retain in a special fund the monies held by him under the Act. Plaintiffs purport to represent a class of all taxpayers of Illinois who reside outside of Cook County. Inasmuch as several counties in addition to Cook also withhold 4% of the amount of the inheritance tax collected, the class as defined in this manner may be too broadly stated. Since,

however, there remains a smaller class of taxpayers within this broader classification who may properly object to the practice of withholding the statutory 4% we conclude that the possible overstatement of the size of the class is not important in this proceeding but may warrant consideration in subsequent hearings in this case upon remand.

The section of the Constitution of 1970 in question provides:

> "Section 9. SALARIES AND FEES
>
> (a) Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected. Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer of the unit. Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes."

The appeal was directly to this court under the provisions of our Rule 302(a) (58 Ill. 2d R. 302(a)).

The defendants contend that the withholding of 4% of the tax collected does not constitute a fee within the meaning of the proscription of article VII, section 9(a), of the Constitution of 1970, but instead constitutes a legislatively mandated distribution to the counties of tax revenues. We do not agree and accordingly affirm the decision of the circuit court of Cook County.

Prior to 1915 section 21 of the Act provided:

> "The treasurer of each county shall be allowed to retain two per cent of all taxes paid and accounted for by him under this Act in full for his services in collecting and paying the same, *in addition to his salary or fees now allowed by law.*" (Emphasis added.) (Laws of 1909, at 319.)

This section was held unconstitutional because it allowed the treasurer to receive compensation in excess of his statutory salary in violation of article X, section 9, of the 1870 Constitution. (*Jones v. O'Connell,* 266 Ill. 443.) It was contended in *Jones* that the 2% which section 21 provided be retained by the county treasurer should be

applied to the payment of his salary and any excess above the amount of the salary should be paid into the county treasury as provided by section 9 of article X of the Constitution of 1870. This court in *Jones* rejected that contention because of the specific language of section 21 which provided that the county treasurer should retain the 2% in addition to his salary or fees allowed by law.

In 1915 the General Assembly reenacted the section in language identical to the present act, except instead of the withholding of 4% as is now provided the enactment in 1915 provided for a withholding of 2%. The present act provides:

> "The treasurer of each county shall retain and pay into the county treasury 4% on all taxes paid and accounted for by him under this Act, in full for all services and expenses rendered, incurred or paid by the county or any of its officers, agents, or employees, in collecting and paying the same." (Ill. Rev. Stat. 1973, ch. 120, par. 394.)

The defendants argue that the provision of the reenactment requiring the county treasurer to retain and "pay into the county treasury" 4% of the tax paid to him removed these amounts from earnings of the county treasurer's office out of which salaries of his office were to be paid under article X, section 9, of the 1870 Constitution and therefore were not fees. Defendants contend that the section constitutes a direction to distribute State funds to the counties. We do not accept this argument. It was not the purpose of the General Assembly in reenacting section 21 to provide for a method of distributing State revenues to the counties. The purpose of the enactment was to give to the counties and not the State, as provided in *Jones,* the fees earned by the county treasurer in the collection of the taxes under the Act.

The sums retained by the county treasurer in the collection of the tax have been traditionally considered fees or commissions earned by the collection of the tax based on the amount collected. (*Jones v. O'Connell;*

*County of Lake v. Westerfield,* 268 Ill. 537; 1912 Ill. Att'y Gen. Biennial Rep. 226.) The language of the reenactment does not change this concept. It specifically provides that the amount retained shall be paid into the county treasury "in full for all services and expenses rendered, incurred or paid by the county or any of its officers, agents, or employees, in collecting and paying the same." This language perpetuates the historic idea of fees earned by the collection of taxes and does not change the practice to a legislative distribution of State revenue.

In *Flynn v. Kucharski,* 45 Ill. 2d 211, 219, the court stated in response to a similar contention:

"There has been no legislative attempt to characterize the system here assailed as a part of the spending process. Rather the statutory language makes it clear that what is involved is a diversion, in the process of collection, and as a part of the statutory machinery of collection \*\*\*."

We think that it is plain from the historical development of section 21 and the language of the reenactment after the decision of this court in *Jones v. O'Connell* that the section does not provide for a legislative distribution of State revenues to the county but instead, as stated by this court in *Flynn,* constitutes a diversion "in the process of collection, and as a part of the statutory machinery of collection." The statutory scheme is clearly a fee based upon funds collected.

Our rejection of defendant's distribution of State revenue argument does not, of course, reflect adversely upon the common and accepted practice of sharing of State revenues with local governmental units. See Ill. Rev. Stat. 1975, ch. 85, par. 611 (State revenue sharing); Ill. Rev. Stat. 1975, ch. 120, par. 424 (motor fuel tax fund).

Defendants further argue that it was not the intention of the constitutional convention by the provisions of article VII, section 9(a), to preclude the General Assembly from distributing tax money to the county in the manner

provided in section 21 of the Act.

We need not again review the purpose of the provisions of article VII, section 9(a), of the 1970 Constitution as revealed by the proceedings of the constitutional convention. Those proceedings have been extensively reviewed by this court in *City of Joliet v. Bosworth,* 64 Ill. 2d 516. We there concluded that the emphasis of the debates of the convention on the third sentence of article VII, section 9(a), providing that "Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes," clearly indicates "the intent to preclude counties from seeking, in any form, reimbursement from the various taxing bodies for county services rendered in the collection of taxes." (*City of Joliet v. Bosworth,* 64 Ill. 2d 516.) The debates indicate a concern of the delegates over the faulty fiscal picture presented by financing county expenses through the use of a "skim off" of revenues from other taxing bodies. Also, as noted in *City of Joliet,* the explanation to the voters prior to the referendum on the 1970 Constitution was that article VII, section 9(a), "would end the practice of charging fees for the collection of taxes." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2730.) In view of the plain language of section 21 of the Act, we cannot say that the 4% of the inheritance tax retained by the county treasurer is not a fee for the collection of the tax.

We conclude that the 4% retained by the county under the provisions of section 21 of the Act constitutes a fee based upon funds collected within the proscription of section 9(a) of article VII of the Constitution of 1970. For this reason we hold section 21 of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 394) unconstitutional. We affirm the judgment of the circuit court of Cook County and remand the cause to that court for further proceedings.

*Affirmed and remanded.*

MR. JUSTICE SCHAEFER, dissenting:

In my opinion this case should not be entertained as a class action. The class is described this way in the complaint:

> "Now comes MICHAEL J. GOLDSTEIN and MARY KLABISCH, individually and on behalf of *all other taxpayers of the State of Illinois residing outside of Cook County,* Illinois, similarly situated, and complaining of the Defendants, and each of them, states as follows:
>
> COUNT I
>
> 1. Individual Plaintiff, MICHAEL J. GOLDSTEIN, is a taxpayer of the State of Illinois residing at 1710 Midland Avenue, Highland Park, Lake County, Illinois and individual Plaintiff, MARY KLABISCH, is a taxpayer of the State of Illinois residing at 548 73rd Street, Downers Grove, DuPage County, Illinois.
>
> 2. Class Plaintiffs are taxpayers of the State of Illinois *other than those taxpayers residing in Cook County,* Illinois." (Emphasis added.)

The first difficulty is that the class as described includes only those taxpayers residing outside of Cook County. If this means anything, it means that none of the funds that are to be paid to the State Treasurer can be used for the benefit of the taxpayers in Cook County. I do not see any legal basis on which this exclusion from the purported class can be sustained.

The second problem that troubles me is that the purported class includes taxpayers in those counties other than Cook which have retained the 4%—just as Cook County did. For example, one of the named plaintiffs is a citizen of Lake County—a very wealthy county—which, like Cook County, has not remitted the 4% to the State Treasurer. I do not understand how a taxpayer in Lake County, or any other nonremitting county, can represent the class, or even be included in it, while Cook County taxpayers are excluded. Equity's requirement that one who seeks equitable relief must come with clean hands still

has vitality.

A further problem arises from the following paragraph in the judgment order of the trial court:

> "3. The Court retains jurisdiction of this cause for the purposes of a determination of the issue of an accounting by the County Treasurer *and his predecessors* as to funds heretofore collected and for a determination as to attorneys fees." (Emphasis supplied.)

The complaint seeks an accounting for "all fees retained by Defendant Rosewell and his predecessors and heretofore turned over to said County of Cook, and to segregate and place those funds in a trust fund to be distributed pursuant to the administration and orders of this Court." No similar relief is requested as to Lake County, or any of the other nonremitting counties.

In my opinion this is not a proper class action, nor does it state a proper case for equitable relief. It could and should have been handled in a simple and uncomplicated manner by a *mandamus* action to compel the payment of the funds in question into the State treasury.