(No. 51648.—)

CLARICE R. SALTIEL, Appellee, v. SIDNEY R. OLSEN
*et al.,* Appellants.

*Opinion filed September 19, 1979.*

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Stuart D. Gordon, Assistant State's Attorney, of counsel), for appellants.

Bilandic, Neistein, Richman, Hauslinger & Young, Ltd., and Lee J. Schwartz, of Chicago (Harry A. Young, Jr., and Lee J. Schwartz, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiff, Clarice R. Saltiel, filed a complaint in the circuit court of Cook County against the defendants, Sidney R. Olsen, as the recorder of deeds and registrar of titles for Cook County, and Edward J. Rosewell, as the Cook County treasurer, for an injunction restraining them from retaining for the use of the county a portion of the monies received from the sale of revenue stamps in payment of the State tax upon the transfer of title to property imposed by the Real Estate Transfer Tax Act (Ill. Rev. Stat. 1977, ch. 120, pars. 1001 through 1008), and from disbursing said monies.

The complaint charged that a provision of section 3 of the Act (Ill. Rev. Stat. 1977, ch. 120, par. 1003) allegedly authorizing the retention of these funds violated article VII, section 9(a), of the Constitution of Illinois. Count I of the complaint prayed that the defendants be directed to turn over the monies in question to the Illinois Department of Revenue. Count II prayed in the alternative that these monies be returned to the taxpayers from whom they were received.

Count II was dismissed on the motion of the plaintiff. The trial court entered judgment in favor of the plaintiff on count I, and an appeal by the defendants to the appellate court was transferred here under Rule 302(a) (58 Ill. 2d R. 302(a)).

The complaint alleged that the plaintiff paid Illinois income tax and other State taxes, and the suit was brought both on her own behalf and on behalf of all other persons similarly situated. The trial court determined that the suit could be properly maintained as a class action, and no

question on that issue is raised here.

The Real Estate Transfer Tax Act was enacted in 1967 and became effective January 1, 1968. (1967 Ill. Laws 1716.) Section 3, which relates to the collection of the tax and the disposition of the proceeds, has been amended twice since the judgment below, as will be noted subsequently in this opinion. The present case is governed by the language of section 3 as it stood prior to those amendments. Its pertinent provisions are as follows: The Act imposes a tax on the transfer of title at the rate of 50 cents for each $500 of value of the real estate being conveyed. The tax is collected by the recorder of deeds and registrar of titles through the sale of revenue stamps, which must be purchased by the taxpayer before the deed can be accepted for recordation or registration. Revenue stamps are sold to the recorder by the Illinois Department of Revenue at the rate of 25 cents per $500 of value. The requisite number of stamps are then sold to each taxpayer at the rate of 50 cents per $500 of value. At all times material to this appeal section 3 provided: "The net proceeds from such sale by the Recorder of Deeds or Registrar of Titles shall be treated as a fee of his office." The section then goes on to authorize these officials to use such proceeds for the purchase of additional stamps.

The term "net proceeds" in this context refers to the excess over the cost incurred by the recorder in purchase of stamps from the Department of Revenue. Thus, although the amount of the tax imposed and the amount paid by the taxpayer is 50 cents per each $500 of value, only one-half of the latter amount is paid over to the State. It is the disposition of the other half which is in dispute here.

Under section 1(b) of the transition schedule to the 1970 Constitution, article VII, section 9(a), became effective December 1, 1971. It provides:

"Compensation of officers and employees and the

> office expenses of units of local government shall not be paid from fees collected. Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer of the unit. Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes."

The plaintiff contends that the monies in question constitute fees collected by the recorder, while the defendants characterize them as a legislatively mandated distribution of collected State tax revenues.

Although section 3 of the Act does not specify what disposition is to be made of the net proceeds, other than those drawn on to purchase additional stamps, and although the complaint alleges that the defendant Olsen "paid himself as a fee the net proceeds from the tax monies collected," it must be noted that the plaintiff's argument, as well as her naming the county treasurer as a defendant, proceed on the assumption that the net proceeds, except for the qualification mentioned above, are deposited in the general corporate account of the county. Thus no objection is made here that the recorder's compensation is paid out of fees collected, in violation of the first sentence of section 9(a). The question, rather, is whether the funds retained by the county are "fees based on funds collected," and therefore forbidden by the last sentence of section 9(a).

The defendants contend that a fee is traditionally a specific charge imposed for the rendition of a specific service, a familiar example being the fee charged for the recording of a deed, whereas here the sums retained by the county are a fixed percentage of the tax proceeds unrelated to any services rendered to the taxpayer.

This analysis leaves out of account, however, the legislative directive that the net proceeds be treated as a fee of the recorder's office. At the time when the Act was adopted the validity of fees received by the recorder of

deeds of Cook County was governed by article X, section 9, of the Constitution of 1870, which provided that the recorder's salary should be fixed by law, and that it should be paid "only out of the fees of the office actually collected" (Ill. Const. 1870, art. X, sec. 9). The section contained the added qualification that fees in excess of the amount of the salary "shall be paid into the county treasury." (Ill. Const. 1870, art. X, sec. 9.) Like provisions regarding fees were contained in section 9 and in section 10 of article X with respect to the payment of other officers of Cook County as well as officers of other counties. (See *City of Joliet v. Bosworth* (1976), 64 Ill. 2d 516, 522.) Prior to the effective date of section 9(a) of article VII of the Constitution of 1970 there was therefore no necessity that the legislature designate the net proceeds received by the recorder of deeds as anything other than a fee. Decisions of this court dealing with the matter make it clear, moreover, that the collection by one governmental entity of a tax due to a different entity has been regarded as a fee imposed by the former, rather than as a distribution of tax revenues after they have been collected. See *Flynn v. Kucharski* (1970), 45 Ill. 2d 211, 218-20; *Goldstein v. Rosewell* (1976), 65 Ill. 2d 325, 327-29.

The defendants also call our attention to section 4.4 of "An Act to revise the law in relation to recorders" (Ill. Rev. Stat. 1977, ch. 115, par. 4.4), which became effective December 1, 1971 (1971 Ill. Laws 3292, 3294). Section 4.4 provides that the recorder "shall deposit in the office of the county treasurer monthly by the 10th day of the month following, all fee income." (Ill. Rev. Stat. 1977, ch. 115, par. 4.4.) This section also permits the recorder to maintain special funds, including one for "excess earnings from the sale of revenue stamps to be maintained in a fund to be used for the purchase of additional stamps from the Illinois Department of Revenue." (Ill. Rev. Stat. 1977, ch. 115, par. 4.4(c).) A companion provision was enacted with

respect to county clerks, who in certain counties other than the County of Cook perform the functions of the recorder of deeds. Ill. Rev. Stat. 1977, ch. 35, par. 1.2d; Ill. Rev. Stat. 1977, ch. 115, par. 1.

The defendants urge that these amendments showed an intention on the part of the legislature to depart from whatever intention it may have held earlier to treat the net proceeds of the transfer tax as a fee. We find this argument strained. It may be conceded that the 1971 amendments resolved any question which might have been raised as to whether compensation was being paid to the recorder by way of fees in contravention of the first sentence of section 9(a) of article VII. As we have noted, that aspect of the tax is not involved in the present case. We do not agree, however, that the 1971 change showed any intention by the legislature to treat the net proceeds as a distribution of collected revenues to the county rather than as a fee. The critical language contained in section 3 of the Act was not changed, and while the amendments of 1971 specified that a portion of the net proceeds needed to purchase future stamps could be retained in a segregated fund, the remainder of the proceeds was left available for the general use of the county.

Each of the amendments contains the following provision: "This amendatory Act of 1971 does not apply to any county which is a home rule unit" (1971 Ill. Laws 3291, 3292; 1971 Ill. Laws 3292, 3294), and, as the plaintiff notes in passing, Cook County is such a unit. In view of the conclusion we have just expressed that section 4.4 is immaterial, we need not consider whether the quoted language could be construed as excluding Cook County from its operation. See *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 271-72.

The defendants also rely on an amendment to section 3 which became effective in August 1978, shortly after the trial court in the present case had declared that section

unconstitutional. This amendment deleted the provision that the net proceeds from the sale of stamps by the recorder of deeds or registrar of titles should be treated "as a fee of his office," and substituted a provision that the proceeds should be treated "as the distribution of the tax which is herein authorized to be collected." Pub. Act 80–1334.

We cannot accept the defendants' invitation to read the 1978 amendment as showing the true intent of the original act. In addition to the difficulty of supposing that members of the General Assembly holding office in 1978 would be able to ascertain the intention of the 1967 Assembly, the normal presumption is that an amendment is intended to change the law as it formerly existed, rather than to reaffirm it, and the defendants offer no considerations which would overcome that presumption. (*McLaughlin v. People* (1949), 403 Ill. 493, 501; 1A. Sutherland, Statutes and Statutory Construction sec. 22.30 (4th ed. 1972).) The 1978 amendment, moreover, was itself superseded by the enactment of Public Act 81–10 in 1979, which made major changes in the structure of the tax. We, of course, express no view on the construction or validity of either the 1978 or the 1979 amendments.

For the reasons given we hold that section 3 of the Real Estate Transfer Tax Act, as it stood when the transactions involved in this litigation took place, violated article VII, section 9(a), of the Constitution of Illinois, and we therefore affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*