SHIRLEY SCHLESSINGER *et al.*, Plaintiffs-Appellants, *v.* SIDNEY R. OLSEN, Cook County Recorder of Deeds and Registrar of Titles, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 79-1293

Opinion filed June 8, 1982.

Bilandic, Neistein, Richman, Hauslinger & Young, Ltd., of Chicago (Harry A. Young, Jr., of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Paul P. Biebel, Jr., and James F. Henry, Assistant State's Attorneys, of counsel), for appellees.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:
This cause is before the court on remand from the Illinois Supreme Court. In our earlier decision in this case (89 Ill. App. 3d 583, 411 N.E.2d 1239), we reversed the trial court's dismissal of plaintiffs' action and remanded the case for determination of the class certification issue prior to any judgment on the merits. The circuit court had originally granted plaintiffs' motion for a preliminary injunction but subsequently granted defendants' motion for reconsideration, vacated the preliminary injunction order, and dismissed the complaint. We believed that a judgment on the merits rendered prior to a decision as to certification of the class precluded appellate review on the merits. The basis for this belief was the uncertainty which would result regarding the scope of the decision, *i.e.*, who would benefit from such a judgment on the merits. (See 89 Ill. App. 3d 583, 590.) The Illinois Supreme Court reversed, holding that in the interests of time and efficiency, a trial court may decide a motion to dismiss prior to resolution of the class certification issue. (86 Ill. 2d 314, 320, 427 N.E.2d 122.) The case was remanded to this court for consideration of the substantive issues presented by the appeal.

In 1978, plaintiffs Shirley Schlessinger and Portia Kern filed a six count complaint in the circuit court of Cook County challenging the constitutionality of the real estate transfer tax statute then in effect (Statute II). (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003.) This statute permitted county recorders of deeds and registrars of titles to retain 50% of the tax collected by them as a "distribution of the tax." Statute II was enacted in response to a similar, eventually successful, attack on the prior existing statute (Statute I). See *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 394 N.E.2d 1197; Ill. Rev. Stat. 1975, ch. 120, par. 1003.

The instant complaint was brought against Sidney R. Olsen, as the recorder of deeds and registrar of titles for Cook County, Edward J. Rosewell, as the Cook County treasurer, and the County of Cook, as a body politic. The two plaintiffs were acting both individually and as potential class representatives. Plaintiff Schlessinger resides in Cook County and during the short period of time when Statute II was in effect, paid real estate transfer taxes of $45.50. She paid these taxes under protest. Plaintiff Kern seeks standing as a class representative of all Illinois taxpayers. Kern did not allege she paid the tax under Statute II.

Counts I, III, and V of the complaint were brought by Schlessinger and asked that the action be certified as a class action on behalf of those parties who paid the real estate transfer tax imposed by Statute II. These counts requested that the monies collected under that statute be returned to the individual taxpayers. Counts II, IV, and VI of the complaint were brought by Schlessinger and Kern and sought certification as a class action on behalf of all Illinois taxpayers. These counts prayed that the appropriate county funds be disgorged to the State.

Count I alleged that the amendment to the original statute (Statute I) which produced Statute II violated the 1970 Illinois Constitution, article VIII, section 2. Statute II and this constitutional provision are set out below:

"A tax is imposed on the privilege of transferring title to real estate, as represented by the deed that is filed for recordation, at the rate of 50 cents for each $500 of value or fraction thereof stated in the declaration provided for in this Section. If, however, the real estate is transferred subject to a mortgage the amount of the mortgage remaining outstanding at the time of transfer shall not be included in the basis of computing the tax.

Such tax shall be collected by the recorder of deeds or registrar of titles of the several counties through the sale of revenue stamps whose design, denominations and form shall be prescribed by the Department. The revenue stamps shall be sold by the Department to such recorder of deeds or registrar of titles who shall cause them to be sold for the purposes prescribed. The Department shall

charge at a rate of 25 cents per $500 of value in units of not less than $500. The proceeds from such sale by the Department shall be deposited in the General Revenue Fund of the State Treasury. The recorder of deeds or registrar of titles of the several counties shall sell the revenue stamps at a rate of 50 cents per $500 of value or fraction thereof. *The net proceeds from such sale by the recorder of deeds or registrar of titles shall be treated as the distribution of the tax which is herein authorized to be charged and collected.* The recorder of deeds or registrar of titles may use such proceeds for the purchase of revenue stamps from the Department. The county board shall appropriate a sufficient amount of money for the purchase of revenue stamps from the Department until such time as the fees of the recorder of deeds or registrar of titles under this Section are sufficient for such purpose. Payment of the tax shall be evidenced by revenue stamps in the amount required to show full payment of the tax imposed by this Section. Except as provided in Section 4 of this Act, no deed shall be accepted for filing by any Recorder of Deeds or Registrar of Titles unless revenue stamps in the required amount have been purchased from the Recorder of Deeds or Registrar of Titles of the county where the deed is being filed for recordation. Such revenue stamps shall be affixed to the deed by the Recorder of Deeds or the Registrar of Titles either before or after recording as requested by the grantee. A person using or affixing a revenue stamp shall cancel it and so deface it as to render it unfit for reuse by marking it with his initials and the day, month and year when the affixing occurs. Such marking shall be made by writing or stamping in indelible ink or by perforating with a machine or punch. However, the revenue stamp shall not be so defaced as to prevent ready determination of its denomination and genuineness." (Emphasis added to reflect challenged portion.) (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003.)

"SECTION 2. STATE FINANCE

(a) The Governor shall prepare and submit to the General Assembly, at a time prescribed by law, a State budget for the ensuing fiscal year. The budget shall set forth the estimated balance of funds available for appropriation at the beginning of the fiscal year, the estimated receipts, and a plan for expenditures and obligations during the fiscal year of every department, authority, public corporation and quasi-public corporation of the State, every State college and university, and every other public agency created by the State, but not of units of local government or school districts. The budget shall also set forth the indebtedness and contingent liabilities of the State and such other information as may be

required by law. Proposed expenditures shall not exceed funds estimated to be available for the fiscal year as shown in the budget.

(b) *The General Assembly by law shall make appropriations for all expenditures of public funds by the State*. Appropriations for a fiscal year shall not exceed funds estimated by the General Assembly to be available during that year. [This Section 2 of Article VIII shall become effective on January 1, 1972. See Transition Schedule Section 1(c).]" (Emphasis added.) Ill. Const. 1970, art. VIII, sec. 2.

Count I alleged that the portion of Statute II which allowed the county to retain $.25 from every $.50 collected constituted a State expenditure of public funds without appropriation by the General Assembly. An expenditure without an appropriation is prohibited by the constitutional provision quoted above. Count II echoed count I except, as explained previously, it was brought by both Schlessinger and Kern, sought to have a broader class certified, and requested that the county funds be repaid to the State of Illinois.

Count III alleged that even if Statute II was a proper appropriation by the General Assembly, it was nevertheless constitutionally defective as violative of article IV, section 8(d), which provides:

"Appropriation bills shall be limited to the subject of appropriations." (Ill. Const. 1970, art. IV, sec. 8(d).)

Since Statute II pertained to subjects other than appropriations, it would violate the above provision if it were deemed an appropriation. As with counts I and II, counts III and IV were identical except in the relief requested, the named plaintiffs and the class sought to be represented.

Count V alleged that Statute II should be struck down on the same basis that the prior real estate transfer tax statute was declared unconstitutional by the Illinois Supreme Court in the *Saltiel* case. *Saltiel* held that Statute I violated the constitutional prohibition against fee offices. (77 Ill. 2d 23, 29.) The relevant constitutional provision reads:

"Section 9. Salaries and Fees

(a) Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected. Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer of the unit. *Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes.*" (Emphasis added.) (Ill. Const. 1970, art. VII, sec. 9.)

Statute I provided, in relevant part:

"The net proceeds from such sale by the recorder of deeds or registrar of titles shall be treated as *a fee of his office*." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 120, par. 1003.)

When the circuit court held this provision unconstitutional, the above italicized words were deleted and the statute was amended to read:

"The net proceeds from such sale by the recorder of deeds or registrar of titles shall be treated as *the distribution of the tax which is herein authorized to be charged and collected.*" (Emphasis added.) (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003.)

Plaintiffs allege that this was a change in semantics but not in substance. They contend the "distribution" in Statute II was in reality a fee paid to the county officer for the collection of the State tax. Once again, count VI mirrored count V with the exception of the relief sought, the named plaintiffs, and the class sought to be represented.

In general, each of the counts of the complaint sought class certification for the plaintiff(s) concerned, injunctive relief to restrain Olsen from accumulating the county fund and Rosewell from distributing the proceeds, an accounting and segregation of the total amounts of the county charges, and a declaration that Statute II violates one of the advanced provisions of the Illinois Constitution and was thus without legal effect. Attorney costs and fees were also requested.

Although section 3 of the Real Estate Transfer Tax has been amended since the challenge presented here, the instant case is governed by the language of the statute prior to the most recent alteration. Simply stated, plaintiffs allege alternatively that the "distribution" is in reality a retention of the "fee" struck down in *Saltiel,* an unauthorized appropriation without an enactment by the General Assembly, or an improper combination of appropriation and other legislative subjects in the same statutory provision. Defendants contend that it is not a fee but a distribution of the net proceeds of the tax similar to State-county revenue sharing. In response to plaintiff's appropriation-without-legislation argument, defendants argue that the funds were not "available for appropriation" since they were never received by the State Treasurer prior to distribution. Similarly, if Statute II does not provide for appropriations, it cannot violate the constitutional provision limiting appropriation bills to the subject of appropriations. In addition to the contentions relative to the constitutionality of the act, defendants challenge the standing of both plaintiffs to maintain a class action.

o 1 If neither plaintiff has at least arguable standing, then the action cannot be properly maintained and the trial court's dismissal must be affirmed. The threshold question is therefore that of standing. In counts II, IV, and VI, plaintiffs purport to represent the class of all Illinois taxpayers. Inasmuch as not all Illinois taxpayers will pay the challenged tax at any time, that no allegation was made to establish Kern's relationship to the payment of the tax, and that Kern's interests as a non-transfer-tax taxpayer might be antagonistic to the interests of transfer-tax taxpayers

(see generally *Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 376 N.E.2d 1377), the class as defined in this manner may be stated too broadly. With the addition of Schlessinger, however, who paid the tax, there remains a small class of transfer tax taxpayers who may properly object to the withholding of the statutory 50%. The possible overstatement of the size of the class, while perhaps warranting consideration on remand, is not important to the instant proceeding. (*Goldstein v. Rosewell* (1976), 65 Ill. 2d 325, 326-27, 357 N.E.2d 1157.) It should be noted that in the *Saltiel* case, the taxpayer bringing the suit was situated similarly to plaintiff Kern here. Our supreme court specifically commented that the trial court had determined the class action maintainable and that the issue was not presented on appeal. *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 24-25.

Plaintiff Schlessinger raises the possible invalidity of the statute on three grounds. Although each of these bases has arguable merit, the most convincing claim is that which rendered the prior statute invalid—the constitutional prohibition against fee offices. See *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 394 N.E.2d 1197.

When the tax was first enacted in 1967 (1967 Ill. Laws 1716), the legislature authorized the recorder to retain the excess amounts over the costs incurred by his purchase of revenue stamps from the Department of Revenue as a fee of his office. This provision was challenged and struck down by our supreme court. The monies collected in the *Saltiel* case, as characterized by the parties there, is strikingly similar to the characterization of the monies collected in the instant litigation. The *Saltiel* court noted:

> "The plaintiff contends that the monies in question constitute fees collected by the recorder, while the defendants characterize them as a legislatively mandated distribution of collected State tax revenues." (77 Ill. 2d 23, 26.)

As in *Saltiel*, the challenge presented in the case at bar is to the retention by the county recorder of deeds and registrar of titles of "fees based on funds collected" in violation of the last sentence of section 9(2) of the Illinois Constitution (set out above). Although the legislature amended Statute I in an attempt to correct the improper language, they did not so amend it as to alter the effect of the directive. Despite the semantic alteration of the legislation, we find that the langauge of the supreme court in *Saltiel* remains dispositive:

> "Decisions of this court dealing with the matter make it clear, moreover, that the collection by one governmental entity of a tax due to a different entity has been regarded as a fee imposed by the former, rather than as a distribution of tax revenues after they have

been collected. See *Flynn v. Kucharski* (1970), 45 Ill. 2d 211, 218-20; *Goldstein v. Rosewell* (1976), 65 Ill. 2d 325, 327-29." *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 27.

■■ Defendants have presented substantially the same arguments as in *Saltiel* with the additional presumption that an amendment to a statute is intended to change the law as it formerly existed rather than to reaffirm it. (See *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 29.) However, in view of the source of the amendatory legislation—a reaction to what resulted in a valid challenge to Statute I—and the superceding of Statute II by the enactment of Public Act 81-10 shortly thereafter, we believe that the effect of the intervening Statute II was to make cosmetic rather than the substantive changes necessary to avoid the constitutional prohibitions.

■■ Accordingly, applying the reasoning of the court in *Saltiel* to the present challenge of Statute II mandates the finding that the retention of the funds by the county officer for his role in the collection of State monies is a violation of the constitutional prohibition against fee offices. Defendants' arguments, essentially the same as those raised in *Saltiel*, fail to show that the changes made to Statute I in drafting Statute II amounted to anything more than a superficial attempt to correct the constitutional infirmities of the statute. The intent of the prohibition against fee offices is. clear: "to preclude counties from seeking, in any form, reimbursement from the various taxing bodies for county services rendered in the collection of taxes." *City of Joliet v. Bosworth* (1976), 64 Ill. 2d 516, 356 N.E.2d 543, cited in *Goldstein v. Rosewell* (1976), 65 Ill. 2d 325, 330, 357 N.E.2d 1157.

With the above disposition, plaintiffs' other challenges to the statute need not be addressed by this court. We nevertheless note that defendants' position, claiming this "disbursement" is neither a fee based on funds collected as was struck down in *Saltiel* and *Goldstein* (see also *Flynn v. Kucharski* (1970), 45 Ill. 2d 211, 258 N.E.2d 329), nor public funds for which a legislative appropriation is required (*cf. County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 280 N.E.2d 224 (under 1870 constitution, the requirement that public funds be appropriated is nondelegable)), is somewhat contradictory. As plaintiffs indicate, each of the cases cited by defendants in support of their contention that the funds in question were not "available for appropriation" is distinguishable. These cases involved either trust funds held by the State on behalf of the Federal Government (*Antle v. Tuchbreiter* (1953), 414 Ill. 571, 111 N.E.2d 836), fees paid to a nongovernmental entity such as the University of Illinois (*Elliott v. University of Illinois* (1936), 365 Ill. 338, 6 N.E.2d 647), or the propriety of "continuing" appropriations (*People ex rel. Kirk v. Lindberg* (1974), 59 Ill. 2d 38, 320 N.E.2d 17). The monies generated in the instant case are public

funds for which an appropriation is constitutionally mandated even if we had decided that the monies do not fall within the prohibition against fee offices.

■■ In conclusion, the propriety of class certification and, correspondingly, the relief to be granted dependent on the certification are matters for the trial court's consideration on remand since factual allegations of standing and common questions of law or fact are involved. (See Ill. Rev. Stat., 1980 Supp., ch. 110, par. 57.2.) The decisions in *Saltiel, Goldstein* and *City of Joliet* are dispositive of this constitutional challenge to the scheme of tax collection condoned by the statute in issue.

The judgment of the trial court is reversed and the case remanded for a determination of the propriety of class certification and to sustain the illegality of the collections under Statute II.

Reversed and remanded with directions.

DOWNING and HARTMAN, JJ., concur.