SHIRLEY SCHLESSINGER *et al.*, Plaintiffs-Appellants, *v.* SIDNEY R. OLSEN, Cook County Recorder of Deeds and Registrar of Titles, *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 79-1293

Opinion filed September 30, 1980.

Bilandic, Neistein, Richman, Hauslinger & Young, Ltd., of Chicago (Harry A. Young, Jr., of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and James F. Henry, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal is concerned with the constitutionality of the Real Estate Transfer Tax Act (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003), which imposes a State tax on the transfer of real estate and allows the county to retain 50 percent of the collection as a "distribution of the tax." Plaintiffs, both individually and as representatives of a class, brought an action in the circuit court against defendants Sidney R. Olsen, Edward Rosewell, and the County of Cook, challenging the statute on several constitutional grounds. The complaint, styled in six counts, charged that the statute violated the Illinois Constitution. Plaintiffs cite the provisions pertaining to appropriation bills, legislative expenditures, and fee officers. Plaintiffs moved to enjoin defendants from commingling the taxes collected under the questioned statute with any other funds and for certification of the class action. During the pendency of this motion, a bill was introduced in the Illinois General Assembly to amend the questioned statute. Plaintiffs thereafter moved the trial court to expedite hearing on the preliminary injunction. The court found the statute constitutionally defective, violat-

ing the provisions prohibiting fee officers and mandating legislative apportionment prior to expenditures. The order also recited that the "action was properly brought as a class action taxpayers' suit on behalf of all Illinois taxpayers." Three other explicit references to the trial court's finding of applicability of the class action vehicle, entered pursuant to the provisions of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.2), were contained in the original draft, but were struck from the signed order.

Following the order providing for a preliminary injunction, plaintiffs made another motion for class action determination. The motion stated that the trial court had initially decided to certify the class action but had subsequently postponed its decision based upon oral representations by defense counsel concerning adequacy of representation by counsel then employed by plaintiffs. Defendants countered with a motion requesting the trial court to reconsider their previous motion to strike the complaint. Defendants also filed a response to plaintiff's motion for class certification. This response maintained that certification would be premature prior to discovery or the filing of an answer. The trial court denied the motion for a determination of the propriety of the class action and, at a later hearing, reversed and remanded its prior order granting the injunction, finding that the statute did not violate the cited constitutional provisions. Accordingly, the trial court also granted defendant's motion to dismiss plaintiff's complaint. Plaintiffs took an appeal from this order.

The real estate transfer tax statute at issue here (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003) (Statute II) was enacted concomitant to a similar, eventually successful, attack on the prior real estate transfer tax statute. (Ill. Rev. Stat. 1975, ch. 120, par. 1003) (Statute I). See *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 394 N.E.2d 1197.) Statute II imposes a State tax on the privilege of transferring title to real estate. The tax is collected as an incident of the filing of the deed for recordation[1] and is assessed at the rate of 50 cents on each $500 of value unless the real estate is transferred subject to a mortgage. In that event, only the unmortgaged portion of the transferred property is subject to the tax.

The statute further provides that the method of collection is through the sale of revenue stamps by the recorder of deeds or registrar of titles. The form denomination, and design of these stamps are provided for by the State Department of Revenue. After the Department of Revenue sells these stamps to the local recorder of deeds or registrar of titles, this local official resells the stamps to those recording deeds or registering titles.

---

[1] Defendants have challenged plaintiff Schlessinger's standing on the ground that she did not pay the tax under any compulsion. They rationalized that she was not required to record the deed and thus could have avoided payment of the tax. This argument ignores the practical necessity of recording, and warrants no additional comment.

The Department, however, charges the local official only 25 cents per $500 of value instead of the full amount of the State tax assessed (50 cents per $500). The Department then places the proceeds from the sale of revenue stamps in the general revenue fund of the State treasury. The local official is allowed to retain the "net proceeds," *i.e.*, the unremitted 25 cents per $500, as a "distribution of the tax" authorized by the statute.

Statute II also provides that the local official may use the retained proceeds from the sale of the stamps to purchase additional stamps from the Department. It directs county boards to allocate money to the recorder of deeds to enable the local official to purchase stamps from the Department in the interim between the enactment of the statute and the collection of "fees [by] the recorder of deeds or registrar of titles" sufficient to provide for future stamp purchases.

Statute I, declared unconstitutional by the Illinois Supreme Court in *Saltiel v. Olsen*, paralleled Statute II except that it provided:

> "The net proceeds from such sale by the recorder of deeds or registrar of titles shall be treated as *a fee of his office*." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 120, par. 1003.

Following the successful challenge to the statute in *Saltiel* premised on the violation of the constitutional prohibition of fee officers, that portion of the statute which contained the words "a fee of his office" was amended in Statute II, which provides:

> "The net proceeds from such sale by the recorder of deeds or registrar of titles shall be treated as the *distribution of the tax which is herein authorized to be charged and collected*." (Emphasis added.) (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003.)

The present challenge to Statute II pertains to the amended portion of the provision.

Count I of the complaint was brought by plaintiff Schlessinger on behalf of herself and all other similarly situated persons. Count II was brought by plaintiffs Schlessinger and Kern on their behalf and as representatives of all other similarly situated persons. Both counts I and II allege that Statute II violates the provision of the Illinois Constitution which requires specific appropriations from the General Assembly for all expenditures. The Constitution provides in relevant part:

> "The General Assembly by law shall make appropriations for all expenditures of public funds by the State." (Ill. Const. 1970, art. VIII, §2(b).)

Plaintiffs contend that since the General Assembly made no specific appropriation for the 25 cents per $500 retained by the local official, the statute constitutes an expenditure of State funds without legislative appropriation.

Counts I and II differ only in the designation of plaintiffs and charac-

ter of relief sought. In count I, the named plaintiff represents those individuals who actually paid the tax. In count II, the representative parties purport to act on behalf of all Illinois taxpayers. The two counts request different relief: plaintiff Schlessinger (count I) requests a refund of the taxes collected from her and from all others similarly situated; count II, as represented by both Schlessinger and Kern, asks that the fees withheld by the local officials be returned to the State, for deposit in the general revenue fund.

Counts III and IV allege that even if the statute is found to be a proper appropriation of funds to be expended, Statute II is nevertheless constitutionally defective as violative of article IV, section 8(d), which states:

> "* * * Appropriation bills shall be limited to the subject of appropriations." (Ill. Const. 1970, art. IV, §8(d).)

These counts maintain that since Statute II pertains to subjects other than appropriations, it violates article IV's limitation on appropriation bills. As with counts I and II, counts III and IV differ not in the issue presented but in the plaintiffs represented and relief requested.

Counts V and VI, styled, as were the other counts, with alternative plaintiffs and remedies, contend that Statute II is vulnerable to challenge on the same basis as Statute I, struck down by our supreme court in *Saltiel v. Olsen*. In *Saltiel*, the court held that Statute I violated the constitutional prohibition of fee officers. That portion of the constitution provides:

> "Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected. Fees may be collected as provided by law and by ordinances and shall be deposited upon receipt with the treasurer of the unit. *Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes.*" (Emphasis added.) (Ill. Const. 1970, art. VII, §9(a).)

Counts V and VI allege that the amended language in Statute II is only a cosmetic substitution and in practical effect continues to provide for fee officers.

Plaintiffs pray, *inter alia*, that the court declare the ordinance unconstitutional and void; that pending the trial of the action and until further order of the court the defendants be directed to segregate the retained portions of the tax; and that after final disposition of the action the court order the proceeds held by defendants to be rebated to persons who paid the tax, or refunded to the State treasury, less, in either instance, attorneys' fees, plaintiffs' costs, and expenses. Since a new statute (Statute III) was enacted by the legislature shortly after the filing of the instant case, no further collections of taxes under Statute II are occurring at the present time.

Defendants cite both case law and the legislative history of the act to support their argument that the statute violates no constitutional provisions. Defendants, in challenging plaintiffs' standing to sue, raise procedural issues pertaining to the propriety of a class action as brought by the named plaintiffs herein.

■■ In the instant case, the trial court made no specific ruling on the propriety of the class action. Although some of the language in the first order (later vacated by the ultimate disposition in favor of defendants) pertained to the class action, the more specific portions of the order, struck from the signed copies, indicate the trial court's intent to refrain from ruling on the class action. Section 57.3 of the Civil Practice Act directs:

> "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the class. This order may be conditional and may be amended before a decision on the merits." (Ill. Rev. Stat. 1979, ch. 110, par. 57.3(a).)

The last sentence quoted above, construed in light of pre-enactment case law, demonstrates that an overbroad initial determination of the class would not impair the viability of the class action. (See *Goldstein v. Rosewell* (1976), 65 Ill. 2d 325, 326-27, 357 N.E.2d 1157.) As long as the certification is made in accord with the provisions of the Civil Practice Act[2], the order may be amended at any time prior to a decision on the merits.

■■ An implicit corollary to the right to amend is that some decision on class certification must be made prior to proceeding on the merits. The statute provides that this finding be made "as soon as practicable after the commencement of an action." Logically, that means prior to ruling on a motion which is dispositive of the merits of the action.

In *Garcia v. Rush-Presbyterian-St. Luke's Medical Center* (N.D. Ill. 1978), 80 F.R.D. 254, the district court reaffirmed the requirement of early certification. *Garcia* was decided under Rule 23 of the Federal Rules

---

[2]   "Prerequisites for the maintenance of a class action.

(a) An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

    (1) The class is so numerous that joinder of all members is impracticable.

    (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

    (3) The representative parties will fairly and adequately protect the interest of the class.

    (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." (Ill. Rev. Stat. 1979, ch. 110, par. 57.2.)

Case law suggests that specific findings as to each of these factors are required. See *In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21, 396 N.E.2d 499.

of Civil Procedure, which contains a provision mandating class determination "as soon as practicable," language which parallels the wording of the Illinois statute. *Garcia* holds that a trial court cannot simply decline certification even if it believed there might be no need for it later. Rather, where the matter of certification was advanced by the plaintiffs and evidence was adduced as to the statutory requirements, a decision should have been made. (*Garcia*, at 267, 271. See also *Vickers v. Trainor* (7th Cir. 1976), 546 F.2d 739, 747.) The finding of whether the requisites for class certification are met is a determination within the discretion of the trial court. (See *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 464-65, 389 N.E.2d 565.) Where, as here, however, the trial court has postponed ruling on class certification and in the interim ruled on the merits, the reviewing court is left in a quandary. See K. Forde, *Illinois's New Class Action Statute*, 59 Chi. Bar Rec. 120, 128-30 (1977); *cf.* R. Fylstra, *Settlement of Class Action Cases Prior to Class Certification*, 69 Ill. B.J. 24 (1980) (discussing problems inherent in settlement of class action at precertification stage).

We have no discretionary finding to review because no ruling was made on certification. Nonetheless, any review which this court might undertake on the merits would necessarily involve determinations of class certification, since there are two distinct classes or subclasses suggested here with two conflicting remedies. It is entirely possible that a ruling on the merit of any one of the three major points advanced by plaintiffs could in itself determine the recovery of an as yet undetermined class. Therefore a ruling on the merits prior to class certification must be seen as premature and advisory in nature, since it would determine the rights of an inchoate class of litigants.[3]

Federal cases construing Rule 23 illustrate the narrow range of actions in which a ruling on the merits is appropriate before inquiry into class certification. These cases, following the lead of the United States Supreme Court in *Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 176, 40 L. Ed. 2d 732, 94 S. Ct. 2140, state that the decision on class certification is completely independent of the possibility of success on the merits. (See *Koos v. First National Bank* (7th Cir. 1974), 496 F.2d 1162, 1165; *Guarte v. Furniture Fair, Inc.* (D. Md. 1977), 75 F.R.D. 525, 528.) The one exception to determination of the propriety of the class action independent from and prior to ruling on the merits arises in the limited instance of the totally frivolous or insubstantial suit. See *Mason v. Calgon Corp.* (W.D. Pa. 1974), 63 F.R.D. 98, 104 ff.

---

[3] See *West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 507, 404 N.E.2d 208, citing *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379, 121 N.E.2d 486, for the proposition that issues should not be decided merely to establish precedent for possible future litigation.

In the instant case, the fact that the trial court after extensive briefing, ruled first in favor of plaintiffs, and then on reconsideration reversed its decision, manifests the substantive nature of plaintiffs' complaint. An examination of the briefs, memoranda, and pleadings of the parties belies any allegation that the suit was frivolous. Moreover, the legislature's amendment of the challenged portion of Statute II, coincidental with the progress of the instant action, is further evidence of the arguable merit of this suit. The trial court's untimely inquiry into the merits would therefore not be sanctioned under the exception for frivolous or insubstantial suits.

■■ ■ At the present stage of this case, absent certification, the action proceeds on behalf of the named individuals and not as a class action, however delineated. Were we to rule on the merits in plaintiffs' favor, the case would be remanded to the trial court as an action by Schlessinger and Kern. The uncertainty facing the trial court in that event demonstrates the difficulty inherent in premature dispositions of the merits of an uncertified class action. The trial court might enter judgment for the individuals and refuse to consider the class certification issue, since a final disposition on the merits would have been mandated by this court. That course would certainly be unfair to plaintiffs and their attorneys who pressed for certification in the trial court, particularly if the remedy was a refund to Schlessinger of her actual payment, a de minimis amount. Alternatively, if class certification were undertaken following a direction by this court to enter judgment for plaintiffs, the result would be manifestly unfair to defendants. Potential plaintiffs would have the benefit of knowing the result prior to making a decision whether to "opt in" or "opt out" of the litigation. Since the provisions of the Civil Practice Act providing for notice to potential class members (Ill. Rev. Stat. 1979, ch. 110, par. 57.4) and intervention by and exclusion of class members (Ill. Rev. Stat. 1979, ch. 110, par. 57.5) are predicated on the need to gain personal jurisdiction over class members, a decision on the merits prior to certification would entail judgment without personal jurisdiction. Under the Federal class action statute such "one way" intervention is prohibited. Potential class members can no longer intervene following the entering of a favorable decision but remain unknown and unaffected by an unfavorable judgment. (See Fed. R. Civ. P. 23(c)(3).) Prior to enactment of this provision, actions in which such intervention was allowed were labeled "spurious" class actions. (See U.S.C.S. Rules of Civil Procedure, Rule 23, Notes of Advisory Committee, at 24-25 (detailing the criticism of "spurious" actions) (1974).) The abolition of "spurious" class actions resulted from several policies, not the least of which was a consideration of the res judicata effect of inchoate class actions. Section 57.2, which lists the prerequisites for maintenance of a class action, makes clear that the trial court may not entertain a class action suit unless it *finds* that the listed requisites

for such an action have been met. Thus this section, which may be analogized to conferring subject matter jurisdiction on the trial court (and by extension the reviewing power on this court), mandates that an inquiry be made and shown upon the record into the propriety of a class action prior to allowing it to proceed.[4]

This requirement is warranted by notions of judicial economy and fairness to the litigants, as well as the judicial disinclination to issue advisory opinions.[5] The notice provisions of the Illinois class action statute (Ill. Rev. Stat. 1979, ch. 110, par. 57.2 *et seq*.) and the exception for frivolous suits will winnow the serious suits from the insubstantial actions. Therefore, a requirement of timely inquiry into class certification should pose no undue burden on the trial court. Rather, it should act to clarify the issues and define the parties before the court, particularly in a case such as the one at bar where different remedies with distinguishable plaintiffs suggest potential class representation problems.

Although certain prior cases, including some in this court (*e.g., Saxon-Western Corp. v. Mahin* (1979), 78 Ill. App. 3d 125, 127, 396 N.E.2d 1185), involved rulings on the merits prior to class certification, the issues in this appeal have brought into sharp focus the necessity for the procedures detailed herein. Therefore, similar to cases in which this court is presented with an incomplete record, we do not have before us information sufficient to determine the merits of plaintiffs' class action. Any decision on the merits by this court prior to delineation of the actual cause of action by certification of a class of plaintiffs would be premature.

For the foregoing reasons the judgment of the trial court is vacated and the cause remanded to the trial court for determination of the certification issue prior to any final judgment on the merits.

Judgment vacated and cause remanded with directions.

DOWNING and HARTMAN, JJ., concur.

---

[4] U.S.C.S. Rules of Civil Procedure, Rule 23, Notes of Advisory Committee, at 13-16 (1974), discusses the debate on whether Rule 23 is a rule of substantive or procedural law. The trend is toward labeling it a rule of procedure rather than a limitation on jurisdiction. See also *Sigel v. General Development Corp.* (M.D. Fla. 1973), 59 F.R.D. 577, 581; accord, *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 337, 371 N.E.2d 634.

[5] Additionally, it has long been the policy of Illinois reviewing courts to refrain from deciding issues of constitutional import where procedural issues would render a constitutional decision improvident. See generally *Lindburg v. Zoning Board of Appeals* (1956), 8 Ill. 2d 254, 255, 133 N.E.2d 266.