THE VILLAGE OF OAK LAWN, Plaintiff-Appellant, *v.* JAMES B. ZAGEL, Director of Revenue, *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-421

Opinion filed May 8, 1981.

Arthur Thorpe and Lee J. Schwartz, both of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Village of Oak Lawn, appeals from an order which denied its motion for a preliminary injunction and dismissed its lawsuit. The dismissed class action complaint challenges six statutes which permit the State to keep 2% of the revenue it collects on behalf of counties and municipalities which impose various local sales taxes.[1] The following issues are raised on appeal:

(1) Does the Illinois Constitution prohibit the State from charging a fee for collecting local taxes?

(2) Does such a fee violate constitutional provisions on uniformity in taxation, due process, and equal protection? and

(3) Is it improper for the State to withhold an amount which exceeds collection costs?

The challenged statutes permit municipalities and counties to impose sales taxes which are collected by the Illinois Department of Revenue. The revenue raised by these local taxes is paid to the appropriate municipality or county "less 2% of such balance, which sum shall be retained by the State Treasurer to cover the cost incurred by the Department in administering and enforcing this section * * *." For the fiscal year which ended June 30, 1979, the Department allegedly withheld almost $10,000,000 under these provisions. According to the complaint, this is substantially more than the cost of collecting the taxes.

■■ A preliminary question is whether the trial court erred in dismissing the action before considering whether to certify the class. (See *Schlessinger v. Olsen* (1980), 89 Ill. App. 3d 583, 411 N.E.2d 1239, *appeal allowed* (1981), ___ Ill. 2d ___.) We note that the procedure used by the trial court in the present case followed the procedure for handling a class action which was established by the supreme court in *Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 377 N.E.2d 813. Since *Landesman* is controlling authority, we conclude that it was proper to rule on the motion to dismiss before deciding whether to certify the class.

---

[1] The taxes are respectively the Municipal Retailers' Occupation Tax (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—1); the Municipal Service Occupation Tax (ch. 24, par. 8—11—5); the Municipal Use Tax (ch. 24, par. 8—11—6); the County Retailers' Occupation Tax (ch. 34, par. 409.1); the County Service Occupation Tax (ch. 34, par. 409.2); and the County Use Tax (ch. 34, par. 409.10).

Oak Lawn argues that the challenged statutes violate the constitutional provision which prohibits fees based on the collection of funds. (Ill. Const. 1970, art. 7, §9(a).) The crucial question in the present case is whether this constitutional provision applies to the State in addition to units of local government.

Since the basic constitutional provision on revenue establishes that, "The General Assembly has the exclusive power to raise revenue by law except as limited or otherwise provided in this Constitution" (Ill. Const. art. 9, §1), we must determine whether section 9(a) of article 7 limits this express grant of exclusive power.

Article 7 is the local government article of the Constitution and section 9 therein, entitled "Salaries and Fees," provides that:

"(a) Compensation of officers and employees and the office expenses *of units of local government* shall not be paid from fees collected. Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer *of the unit*. Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes.

(b) An increase or decrease in the salary of an elected officer *of any unit of local government* shall not take effect during the term for which that officer is elected." (Emphasis added.)

■■ Plaintiff contends that the third sentence in section 9 applies to the State, although it does not mention the State, and every other sentence in the section refers to local units of government. This would mean that a sentence which does not even refer to the State, and which is buried in a section which pertains solely to local government, would limit the expressly granted revenue raising power of the General Assembly. We do not believe that was the intent of either the Constitutional Convention or the voters who approved the Constitution. It is clear to us that the third sentence in section 9 applies only to units of local government. Examination of the Record of Proceedings of the Constitutional Convention leads to the same conclusion.

Part of the section on fees, submitted by the Committee on Local Government, provided that, "Officers and employees of units of local government may collect fees in the amounts and in the manner as provided by law, but fees shall not be based upon funds collected or the levy or extension of taxes." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1717.) During the constitutional debates it was suggested that, solely for stylistic reasons, the Committee on Style, Drafting and Submission separate this proposal into two sentences. (4 Record of Proceedings 3405.) The delegate who was in charge of explaining this section to the committee of the whole agreed to make this stylistic recommendation. (4 Record of Proceedings 3405.) The proposal was passed, with amendments that are immaterial to this case, and sent to

the Committee on Style, Drafting and Submission, where the recommended stylistic change was made. (7 Record of Proceedings 1957.) Since the Committee on Style, Drafting and Submission was merely a procedural committee (*Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 471, 359 N.E.2d 138), the convention could not have intended the stylistic revision made by this committee to have the substantive effect of making the disputed provision applicable to the State.

We conclude that the 1970 Illinois Constitution permits the State to withhold, as a fee, a percentage of the funds it collects on behalf of units of local government.

Oak Lawn also argues that the 2% collection charge is invalid under the rationale of *Flynn v. Kucharski* (1970), 45 Ill. 2d 211, 258 N.E.2d 329. The tax collection system in *Flynn* violated the constitutional requirement of uniform taxation because of disparate treatment of taxpayers within the same taxing unit. Under the county tax law challenged in *Flynn*, Chicagoans were required to pay their property taxes to the county collector, while taxpayers who resided in suburban Cook County could pay either the county collector or their township collector. The option was significant because township collectors were authorized to deduct 2% of the taxes they collected, and after deducting expenses, the balance of the collected fees was paid to the township treasury. The effect of this system was to divert, to townships, revenue raised by county taxes and, thus, to reduce the amount of taxes which the townships had to levy. The supreme court held that the unequal treatment of taxpayers within the same taxing unit was substantial enough to violate the requirements of uniform taxation.

██ Oak Lawn contends that the provisions attacked in this case are invalid under *Flynn* because part of the local tax revenue collected by the State is used to benefit areas in the State which have not imposed similar taxes. However, in the present case, there is no lack of uniformity in taxation among taxpayers within the same taxing units. All the taxpayers within a municipality or county which imposes a local sales tax are subject to the same taxes and the same collection procedures. These taxpayers cannot complain that they are deprived of due process or equal protection just because other residents of the State live in communities which do not impose similar local taxes. And because, as we concluded above, the State can raise revenue by imposing a fee on taxes which it collects on behalf of units of local government, plaintiff cannot complain that it is being treated unfairly just because this revenue is spent in another part of the State.

Oak Lawn further argues that an additional basis for the decision in *Flynn* was that there was a misrepresentation of the purposes for which tax revenues were being raised. Thus, it is argued that, in this case, there

are misrepresentations to taxpayers who are informed that local taxes will be spent only in accordance with various appropriation ordinances which do not provide for payments to the State for State-wide use.

We do not believe that the *Flynn* case was based on or concerned with such a misrepresentation. Furthermore, there is no misrepresentation in this case because the statutes give plain notice that 2% of the tax revenue will be retained by the State.

■■ The final issue is whether it is unlawful for the State to retain more than the amount it cost to collect the local sales taxes. Each of the contested statutes provides that the local sales tax revenue shall be paid to the taxing unit, "less 2% of such balance, which sum shall be retained by the State Treasurer to cover the cost incurred by the Department in administering and enforcing this Section * * *."

Plaintiff argues that this case should be remanded so that it can show that the 2% charge exceeds the actual collection costs. "At the very least," according to plaintiff, "this cause should be remanded to the trial court to determine an appropriate level of funding for the State's collection function for the local sales taxes."

We presume that, in providing for 2% retentions, the General Assembly did not intend to engage in vain or useless actions. (*Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 202 N.E.2d 512.) To remand this case for judicial determination of an "appropriate" level of retention would require us to ignore specific, certain, and unambiguous percentage provisions. But, because these percentage provisions are certain and unambiguous, the only legitimate function for the court is to enforce the law enacted. *Certain Taxpayers v. Sheahan* (1970), 45 Ill. 2d 75, 256 N.E.2d 758.

We realize that the "cover of cost" clauses might be construed as meaning that the State could only retain enough money to cover the actual costs of collecting the taxes. But, this would mean that the General Assembly engaged in vain and useless actions when it enacted provisions which specify the exact percentage to be retained by the State. Obviously collection costs will vary from year to year and will probably never be exactly 2%. It is apparent that, in conjunction with the percentage retention provisions, the "cover the cost" clauses mean that the State can only retain 2% of the revenue collected even if the cost of "administering and enforcing" these statutes exceeds 2% of the revenue collected. Consequently, we conclude that the State can retain the entire 2% even if this amount exceeds the cost of collecting the local sales taxes.

For the preceding reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.