HENRIETTA VANZANTEN *et al.* Plaintiffs in Error, *vs.* JOHN VANZANTEN, JR., *et al.* Defendants in Error.

*Opinion filed October 27, 1915.*

1. DEEDS—*the grantor's intention is without effect unless deeds. are delivered.* The fact that the grantor intended·that his children should have the land described in their respective deeds is without effect to pass· title unless the deeds are delivered.

2. SAME—*what will be held.to be a parol partition.* Where the owner of land deeds the same in parcels to his children and puts each in possession of his or her respective parcel but the deeds are not delivered until after his death, when the widow and children meet, and after reading the last will of the deceased, which purports to devise all the estate to the widow, decide not to probate the will but to divide the land according to the deeds and the previous possession of the children, and they thereafter carry out such arrangement for several years, there is a parol partition, which those assenting to are estopped to deny in a court of equity.

3. EQUITY—*when parol partition may be decreed under a general prayer for relief.* Even though the specific prayer of a bill is to set aside a will and deed as clouds upon complainant's title, yet if there is a prayer for general relief the court may decree relief upon the ground there had been a parol partition of the land, where the bill alleges all the facts necessary for a specific prayer for such decree and the facts proven authorize it.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

STEPHEN C. KNIGHT, (THOMAS E. D. BRADLEY, of counsel,) for plaintiffs in error.

FREDERIC R. DEYOUNG, for defendants in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Nicholas VanZanten filed his bill in the circuit court of Cook county to remove a cloud upon his title to twenty-four acres of land in that county and to quiet his title. He died before the hearing and the suit was revived in the

name of his widow and children. Upon a hearing. in open court the bill was dismissed for want of equity, and this writ of error has been sued out to reverse the decree.

John VanZanten, Sr., was a truck farmer and owned eighty-six acres of land near the village of South Holland, in Cook county. He had a wife, three sons, (Jacob, Nicholas and John, Jr.,) and two daughters, Nellie and Dora. Jacob, the oldest son, was a minister and resided in Wisconsin. In 1892 Nicholas, the second son, married and moved on the twenty-four acres of land in controversy, into a house erected by his father. John, Jr., the youngest son, was married in 1896 and remained in the old homestead, his father and mother removing to a new house erected by them close by. Dora was married in 1897 and with her husband resided upon a part of the eighty-six acres. Nellie never married but continued to live with her parents. In 1898 John VanZanten, Sr., was about sixty-three years old. On March 4, 1898, he and his wife signed two deeds,—one to Nicholas and the other to the unmarried daughter, Nellie. On June 3, 1898, they signed two more deeds,—one to John, Jr., and the other to Dora. The four deeds were acknowledged on June 8, 1898. On November 14, 1898, they signed two other deeds,—one to Jacob and another to John, Jr.,—which were acknowledged November 23, 1898. On May 9, 1899, they signed four more deeds, which were acknowledged May 16, 1899,—one each to Nicholas, John, Jr., Nellie and Dora. These deeds included eighty-six acres,—all the land John VanZanten, Sr., owned,—and were in the form of statutory warranty deeds purporting to be absolute conveyances in fee simple. On May 23, 1899, John VanZanten, Sr., executed his will, whereby, after providing for the payment of his debts and funeral expenses, he devised all of his estate, both real and personal, to his widow for life, with full power and authority to sell and dispose of the same, or any part thereof, in any manner she might deem proper, the remainder

undisposed of at her death to be divided equally among his five children. On June 24, 1905, John VanZanten, Sr., died, and four days later his widow and children met at his house, the deeds were taken from a tin box in which he had kept them since they were made, and delivered to the grantees named therein and were subsequently recorded. The will, which was also in the tin box, was taken out and read, and a contract written in the Dutch language was signed by the five children, as follows:

"SOUTH HOLLAND, ILLINOIS, *June 28, 1905.*

"Present, Mother VanZanten, Jacob, Klaas, John, Nellie and Dora VanZanten (Paarlberg.)

"Purpose of coming together is the opening of father's testament, made May 23, 1899. Everything found in the best order and carried out according to the reading and speaking of the testament. Furthermore it was found good for this year to pay mother one dollar for every acre for her support. Naturally each pays the taxes on his own land.

"Jacob and Dora offered to pay the tax and up-keep of the woodland and the eight acres by the Illinois Central railroad, and all what is left of the rent from these two pieces to give to mother."

On February 26, 1909, the will was admitted to probate and John VanZanten, Jr., was appointed executor. He filed an inventory, including the land in question. The personal property inventoried consisted of two notes for about $500 each. On November 30, 1909, the widow, purporting to act under authority conferred by the will, conveyed to John, Jr., the twenty-four acres included in the two deeds to Nicholas. This deed, the inventory and the will of John VanZanten, Sr., constitute the cloud which the bill was filed to remove. The answer, among other things, denied the delivery of the deeds.

The plaintiffs in error insist that the deeds were delivered to their father so as to vest the title to the twenty-four acres in controversy in him. The circumstances immediately attending the signing and acknowledgment of the deeds and the execution of the will do not appear in evidence. No witness testified who had ever seen either one of

the deeds prior to the meeting after the death of John Van-
Zanten, Sr., when they were taken from his tin box. There
is evidence tending to show that statements were made by
him that he had made deeds; that he said that all the
family saw the deeds and everybody was satisfied and if he
died there would be no trouble; that he got Jacob from
Michigan and he read the deeds to the children and they
were all well satisfied, and that Mrs. VanZanten said all
the children were together and the old man gave each one
a deed, which they read and were satisfied; that neither
she nor her husband had changed their minds, and she did
not intend to change the deeds because then she would not
have a clear conscience. No witness testified the deeds
were delivered by the grantor to his children, or to any
facts or circumstances which would authorize the infer-
ence that they, or any of them, were delivered. The evi-
dence makes it clear the grantor intended to give his chil-
dren the land described in their respective deeds, but so
far as the proof shows he kept the deeds in his possession
and control. It is essential in order to pass title by deed
that the deed be in some manner delivered. The intention
of the grantor cannot be effective unless made so by de-
livery. *Abrams* v. *Beale,* 224 Ill. 496; *Wilenou* v. *Hand-
lon,* 207 id. 104; *Walls* v. *Ritter,* 180 id. 616; *Weber* v.
*Christen,* 121 id. 91.

The plaintiffs in error contend that if the deeds were
never delivered by the grantor and no title passed during
his life to the grantees by virtue of the deeds, by the vol-
untary action and agreement of the parties after the death
of John VanZanten, Sr., they partitioned the land among
themselves, in pursuance of which each continued in the
possession and control of his or her respective parcel,
without question or objection, until after the will was pro-
bated, about four years later. We think the legitimate in-
ference from the evidence is that at the meeting of the
children and widow of John VanZanten, Sr., a few days

after his death, it was agreed among all of them to accept the division of the land among them according to his plan and wish as indicated by the deeds; that an understanding was reached as to the disposition of the personal estate and as to the provision for the widow, and the will was not to be probated. This was not all embraced in the instrument signed by the five children, but that agreement, and other facts proved, to our minds warrant no other reasonable conclusion. The personal estate is variously stated to have amounted to from $1000 to $1500. By the consent of all of the children and the widow the deeds were delivered to the respective grantees, and the written agreement signed by all the children shows conclusively that it was the understanding that each of them was owner in severalty of the land described in his or her deed. Their father had long before put each of them in possession of the land intended for them, respectively, and given them complete management and control, they each paying to their father a small sum annually. This payment was not provided for by any written agreement but was the subject of a parol arrangement. Defendants in error insist that it was rental paid for the use of the land, but this is not justified by the evidence. The eighty-six acres of land were assessed in the name of John Van-Zanten, Sr., and the taxes paid by him. The sum paid him by the children after he signed the deeds and put them in possession of the land amounted to little more than the taxes, according to the evidence. Nicholas Van-Zanten paid $24 per year for two or three years and afterwards $51 per year. There can be no doubt John VanZanten, Sr., indicated by the deeds the division he wanted made of the land among his children and that this was known to them about the time the last of the deeds was executed. There was testimony that John VanZanten, Sr., told some of his neighbors he had given each of his children a place and had made them deeds. The

son Nicholas had been in possession of the land described in his deeds ever since his marriage, which occurred in 1892. He had sole management and control of it, received the income from it, paying annually to his father a sum sufficient to pay the taxes thereon. He made permanent and valuable improvements on the land both before his father's death and after the meeting of the children and the agreement among them subsequent to their father's death. The children were all adults, under no disability. They and the widow were the only persons having any interest in the estate, except creditors, and it is not claimed that the rights of any creditor are involved. The widow and children could by agreement make any disposition of the property they chose, regardless of the will. (*Cotterell* v. *Coen,* 246 Ill. 410.) Unquestionably the children, by their written instrument executed a few days after their father's death, agreed to a different disposition of the estate from that made by the will, and while the agreement was not signed by the widow, she was present when it was made and knew of and acquiesced in it. The deeds were in her possession, were procured from the place they were kept and delivered in pursuance of the agreement and understanding among the children. There was also evidence that some time afterwards the widow said she had no intention of interfering with the deeds; that she would not have a clear conscience if she did. Upon the faith of his ownership of the land Nicholas VanZanten continued to possess, control and manage the land and to make permanent and valuable improvements thereon. We are of the opinion that the agreement and action of the children of John VanZanten, Sr., at the meeting after his death, amounted to a parol partition of the land among them and vested the equitable title in each, of his or her respective portion. By their action and agreement they each accepted the portion of the land their father had intended for them, respectively. The fact that

they may have thought the deeds vested title in them can make no difference. They agreed to the partition as indicated in the deeds. No facts were concealed from any of them, no fraud was practiced, and what they agreed to and did was as valid a parol partition as if there had been no deeds. (*Ater* v. *Smith,* 245 Ill. 57.) Although the widow did not sign any agreement she is now estopped to deny the validity of the action of the children, which she knew of and acquiesced in at the time.

Defendants in error claim no relief can be granted on the ground that there was a parol partition for the reason that the bill is one to remove a cloud from the title assumed to be in plaintiffs in error, and that the specific relief prayed for is that the will of John VanZanten, Sr., the description of the property in the inventory, and the deed from the widow to John VanZanten, Jr., be decreed to be null and void as to Nicholas VanZanten's land and be set aside as clouds on his title. In addition to the specific relief prayed, the bill contained a prayer for general relief, and under some conditions, where complainant is not entitled, under the proof, to the specific relief prayed, he may be granted relief under the general prayer. In *Cook* v. *Martyn,* 2 Atk. 3, Lord Hardwicke is credited with having said: "Praying general relief is sufficient though the plaintiff should not be more specific in the prayer of the bill; and Mr. Robins, a very eminent counsel, used to say, general relief is the best prayer next to the Lord's prayer." Under the prayer for general relief a complainant may be given any relief the proof shows him entitled to, provided it is agreeable to the case made by the bill. (Story's Eq. Pl.—10th ed.—secs. 40, 41.) The allegations relied on must be such as to afford ground for the relief and must not have been introduced for the mere purpose of corroborating complainant's right to the specific relief prayed. Upon the general prayer the court may give every relief consistent with the case made by

269 — 32

the bill. (1 Daniell's Ch. Pl. & Pr. 437-439.) "Where the plaintiff prays for special and also for general relief, if the special prayer is such that no relief can be granted under it, the court may, under the prayer for general relief, grant any proper relief consistent with the case made by the bill. Relief may be granted under the general prayer different from that specifically prayed for when it is consistent with the facts alleged and proved, provided it does not take the defendant by surprise." (3 Ency. of Pl. & Pr. 348, 349.) The decisions in this State are in harmony with these general rules and principles. *Walker* v. *Converse,* 148 Ill. 622; *Hopkins* v. *Snedaker,* 71 id. 449; *Rankin* v. *Rankin,* 216 id. 132; *Cushman* v. *Bonfield,* 139 id. 219.

We are of opinion the allegations of the bill are sufficient to authorize relief under the general prayer on the ground that there was a parol partition of the land. The bill sets up all the facts that could have been alleged if it had declared there had been a parol partition and had specifically prayed the court to so decree. The parties on the trial had the opportunity to, and presumably did, offer all the proof they had which would throw any light on that question. The allegations of the bill and the specific relief prayed were such that both sides went fully into the acts and conduct of the parties now relied upon as entitling plaintiffs in error to relief under the general prayer. In this court those matters have been argued in the briefs of counsel on both sides, so that it does not now seem, in granting relief upon the ground of a parol partition, any of the parties have been taken by surprise or denied any right. As we view it, if we were to affirm the decree without prejudice to the right of the complainants to file a bill for relief on the specific ground that there had been a parol partition, the allegations of the bill as to facts relied upon would not be substantially different from the present bill nor would the proof of the material facts be different.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*