ROBERT HOFFMAN *et al.*, Plaintiffs-Appellants, v. FRANK J. NUSTRA, Recorder of Deeds, *et al.*, Defendants-Appellees (Portia Kern, Petitioner-Appellant; The Department of Revenue, Intervenor-Plaintiffs-Appellees).

Second District   Nos. 2—85—0012, 2—85—0032, 2—85—0036 cons.

Opinion filed May 5, 1986.

Michael P. Myers, Arthur T. Susman, and Judith N. Kolman, all of Joseph, Susman & Myers, of Chicago, for appellant Portia Kern.

Robert D. Allison, of Plotkin & Jacobs, Ltd., of Chicago, and Richard J. Biondi, of Wasneski & Biondi, of Waukegan, for other appellants.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Gabriel Rodriguez, Assistant Attorney General, of Chicago, of counsel), for intervenors State of Illinois and Illinois Department of Revenue.

Fred L. Foreman, State's Attorney, of Waukegan (Bruce A. Slivnick and John W. Bartels, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:
This class action was filed by Lake County taxpayers to challenge the Real Estate Transfer Tax Act collections by Lake County officials from August 7, 1978, through May 16, 1979, as provided in section 3 of that statute, as amended by Public Act 80–1334 (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003). Plaintiffs, Robert Hoffman and Barbara Hoffman, beneficiaries under trust agreement No. 7718, and Michael W. Gantar, as trustee under trust No. 7718, acting individually and on behalf of taxpayers who had paid the real estate transfer

tax (Hoffmans), brought this suit against defendants Frank J. Nustra as the recorder of deeds of Lake County, Jack Anderson as the treasurer of Lake County, and the County of Lake as a body politic (county). Portia Kern later sought leave to intervene as a class representative of all Illinois taxpayers (Kern), and Attorney General Neil Hartigan sought leave to intervene on behalf of the State of Illinois and the Department of Revenue (State).

The circuit court initially denied the county's motion to dismiss and for summary judgment, and ruled for the Hoffmans, granting summary judgment on the primary issue of the constitutionality of the Real Estate Transfer Tax Act, insofar as it allowed counties to retain 25 cents of the 50 cents per each $500 of value which was taxed upon transfer of real estate. The court also agreed to certify as members of the plaintiff class all persons who paid the real estate transfer tax in Lake County between August 7, 1978, and May 17, 1979, but the proposed written order which was prepared by the Hoffmans was never entered. The county filed a direct appeal to the Illinois Supreme Court from the court's orders denying their motion for summary judgment and granting the Hoffmans' motion for summary judgment and for class certification.

The county's appeal to the Illinois Supreme Court was consolidated there with a Cook County case, Schlessinger v. Olsen (circuit court of Cook County (April 6, 1983), No. 78 CH 8524, memorandum op.), since each case involved the disposition of tax moneys collected under the Real Estate Transfer Tax Act during that same period. In its memorandum opinion in the Cook County case, the circuit court declared that section 3 of the Real Estate Transfer Tax Act was unconstitutional in its entirety, and concluded that the individuals who paid the transfer tax were entitled to the moneys unlawfully retained by the county. The Illinois Supreme Court reversed and remanded the Cook County case, finding that the State, rather than the individuals who had paid the transfer tax, was entitled to the tax revenues unlawfully retained. (*Schlessinger v. Olsen* (1984), 102 Ill. 2d 497 (Schlessinger IV).) Noting, however, that the legislature had passed a statute, Public Act 83—57, effective August 15, 1983 (Ill. Ann. Stat., ch. 120, par. 1001 (Smith-Hurd Supp. 1985) (the "forgiveness statute"), allowing the counties to retain the unconstitutional collections for the reasons set forth in the statute, the supreme court directed the funds in controversy be delivered to the appropriate Cook County officers. (*Schlessinger v. Olsen* (1984), 102 Ill. 2d 497, 503.) The appeal of the instant cause in that court was dismissed as premature since the court's judgment disposed of fewer than all the claims presented, and

no finding pursuant to Supreme Court Rule 304(a) had been made. 87 Ill. 2d R. 304(a).

In light of the supreme court's modification of its opinion on denial of the petition for rehearing on September 28, 1984, which directed the funds be delivered to the appropriate Cook County officials, the county here moved on October 2, 1984, that the court reconsider and vacate its prior partial summary judgment order in the Hoffmans' favor, and reconsider its denial of the county's motions for summary judgment and for dismissal. The basis for the county's motion to dismiss the cause with prejudice was the *Schlessinger IV* holding that the funds collected by Cook County and in controversy in that case were to be delivered to Cook County. On October 22, the court allowed the State's petition to intervene and denied Kern's petition to intervene. The Hoffmans were allowed time to respond to the county's motion to reconsider, and the county was allowed time to reply to same. The Hoffmans' response was comprised of their motion for leave to amend their complaint, for summary judgment on the amended complaint, and for appointment of a trustee. In essence, Hoffmans' motion sought to change the relief requested from tax payer repayment to a declaratory judgment, an accounting, and a disgorgement to the State. They also sought summary judgment on their amended complaint on the basis the forgiveness statute was unconstitutional as violative of article VII, section 9 and article I, section 16 of the Illinois Constitution. (Ill. Const. 1970, art. VII, sec. 9; art. I, sec. 16.) Thereafter, Portia Kern filed her motion to reconsider denial of her petition to intervene and to amend her complaint to include the allegation that the forgiveness statute was violative of article I, section 16, article VII, section 9, and article VIII, section 2 of the Illinois Constitution. (Ill. Const. 1970, art. I, sec. 16, art. VII, sec. 9, art. VIII, sec. 2.) The county filed its objections to the Hoffmans' motions.

The court denied Kern's motion to reconsider on November 28, 1984, and granted the county's motion to dismiss with prejudice and denied the Hoffmans' motion to amend their complaint and for summary judgment on December 12. On December 13, the county filed its answer to the State's complaint, and moved for summary judgment. On December 19, the court denied with prejudice the State's claim that the transfer-tax funds retained by the county should be paid into the general revenue fund of the State treasury. Kern filed her appeal from the court's October 22 and November 28 orders denying her leave to intervene and motion to reconsider that denial. Kern also appealed the court's December 19 order, except insofar as it found section 3 of the Real Estate Transfer Tax Act as amended by Public Act

80—1334 unconstitutional. The Hoffmans filed their notice of appeal from the court's December 12 order and from its December 19 order, except insofar as it found section 3 of the Real Estate Transfer Tax Act as amended by Public Act 80—1334 unconstitutional.

The parties present these issues for review: (1) whether Public Act No. 83—57, the forgiveness statute, is unconstitutional; (2) whether Hoffmans' and Kern's proposed constitutional challenges and prayers for disgorgment are barred by the holding of *Schlessinger IV, res judicata*, equitable considerations, or mitigating factors; (3) whether the court abused its discretion in denying the Hoffmans' motions for leave to amend their complaint to challenge the constitutionality of the forgiveness statute and for summary judgment; and (4) whether the court abused its discretion in denying Kern's petition to intervene.

Prior to oral argument, Kern and the Hoffmans jointly moved to strike the State's brief, and the motion was ordered taken with the case. They argue, with no citation of authority, that the State has waived its right to address the constitutionality of the forgiveness statute, since it failed to respond, plead, or object to various aspects of the proceedings below in which the constitutionality of the statute was placed at issue, or to appeal the court's granting of the county's motion for summary judgment against it.

The State was allowed to intervene in the cause and, as such, is a party of record. In *Rosenthal v. First National Bank* (1970), 127 Ill. App. 2d 371, 375-76, the term "appellee" was defined to include in its meaning a party "who has an interest adverse to setting aside or reversing the judgment." The Attorney General is the legal officer of the State, and has not only those duties and powers prescribed by law but also common law authority traditionally held by the Attorney General. (*Newberg-Krug-Brighton v. Illinois State Toll Highway Authority* (1978), 63 Ill. App. 3d 780.) The Attorney General was concerned, by common law and statute, with impairment of State revenues, diminution of public charities, and misconduct of public officers. *People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569.

In the original slip opinion of the Illinois Supreme Court in *Schlessinger IV*, the supreme court held that the tax revenues unlawfully retained by Cook County should be deposited in the general revenue fund of the State treasury. (*Schlessinger v. Olsen* (May 25, 1984), Nos. 58581, 59169, slip op. at 4.) After issuance ·of the slip opinion, the State filed its petition to intervene here. The supreme court's opinion was later modified, however, on denial of Schlessinger's petition for rehearing, to reflect the existence of the forgiveness statute and to

order the funds in controversy be delivered to Cook County. As noted, the county here then sought to have the court reconsider its earlier grant of partial summary judgment relief to the Hoffmans, and to reconsider its denial of the county's motion to dismiss and for summary judgment. The court's subsequent order directed the Hoffmans to respond to the county's motion and the county to reply; the court's order did not similarly include any direction to the State. Ostensibly in recognition of the fact the State, as a party to *Schlessinger IV*, would be collaterally estopped from challenging the validity of that decision.

◼ Within the provisions of the forgiveness statute itself, the legislature specifically noted that the public would benefit by the State's avoidance of the expense involved in liquidating and collecting this debt of the several counties and that the public would further benefit by being spared the imposition and collection of additional property taxes by counties to pay such debts. Thus, the State here has an interest which is adverse to a setting aside of the court's judgment below. Further, it is well established that an appellee may advance any argument supported by the record which will sustain the judgment of the trial court. (*State Farm Mutual Automobile Insurance Co. v. Stuckey* (1983), 112 Ill. App. 3d 647.) Accordingly, the motion to strike the State's brief is denied.

◼ We agree with the county that the primary issue in this appeal is whether the court erred in denying the Hoffmans leave to amend their complaint and in dismissing their initial complaint. It is true, as the Hoffmans argue, that the Civil Practice Law provisions allowing amendments to pleadings are to be liberally construed. (Ill. Rev. Stat. 1983, ch. 110, pars. 2—616, 2—617; *Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 417; *Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29.) A trial court's power to allow amendments should be freely exercised in order that litigants may fully present their causes of action. (*Giannini v. First National Bank* (1985), 136 Ill. App. 3d 971, 988.) Factors to be considered in determining whether the trial court's discretion in permitting or denying amendments was properly exercised is whether the proposed amendment would cure a defective pleading, whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, and whether previous opportunities to amend pleadings could be identified. (*Kupianen v. Graham* (1982), 107 Ill. App. 3d 373.) A trial court may consider the ultimate efficacy of a claim in passing on a motion to amend a pleading and may deny leave if the proposed amendment does not cure the defect. *Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488.

██ ▌ Whether to allow an amendment to a pleading rests in the sound discretion of the trial judge (*Richardson v. Economy Fire & Casualty Co.* (1984), 126 Ill. App. 3d 520), and the paramount consideration is whether the amendment furthers the interests of justice. (*United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847.) Generally, amendments should not be permitted if such amendments concern matters which the pleader knew at the time the original pleading was filed, and the pleader offers no good reason for not having included such matters in the original pleading. (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 745.) A trial court may allow amendments in any matter which may enable the plaintiff to sustain the claim intended to be brought. (*Mooney v. Underwriters at Lloyd's, London* (1965), 33 Ill. 2d 566; Ill. Rev. Stat. 1983, ch. 110, par. 2—616.) An amended pleading does not supersede a prior pleading unless it is complete in itself and does not refer to or adopt the prior pleading. (*Robins v. Lasky* (1984), 123 Ill. App. 3d 194.) Under section 2—616 of the Civil Practice Law, the cause of action to be added by amendment must have been timely when the original complaint was filed. (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 417.) A trial court's denial of a motion to amend will not be regarded as prejudicial error unless there has been a manifest abuse of discretion. *Dick v. Gursoy* (1984), 124 Ill. App. 3d 185.

██ The amendment proposed by the Hoffmans sought to change the relief requested from that of repayment to those who paid the tax to that of a declaratory judgment to the effect that Public Act No. 83—57 was unconstitutional, and for an accounting and disgorgement to the State. They also asked for a modified summary judgment order declaring that the tax revenues were unlawfully retained by the defendants, that the State of Illinois is entitled to the tax revenues which were unlawfully retained, and that the legislature's attempt to "cancel" the indebtedness by means of Public Act No. 83—57 violates article VII, section 9 article I, section 16 of the Illinois Constitution. In effect, the Hoffmans were seeking to change both their class representation from that of individuals who actually paid the real estate transfer tax to that of State taxpayers in general, and the relief sought from repayment to them as persons who had paid the real estate transfer tax to a disgorgement to the State treasury. We note here that the statute authorizing proceedings for declaratory judgment is not designed to aid the disposition of pending cases (*Bathe v. Stamper* (1966), 75 Ill. App. 2d 265), and a trial court does not abuse its discretion when it refuses to grant a declaratory judgment which

would have the effect of determining the issues or validity of the defenses in a pending case (*Krebs v. Mini* (1977), 53 Ill. App. 3d 787).

In determining whether the court abused its discretion in denying the Hoffmans' motion to amend and granting the county's motion to dismiss, a necessary, albeit rather detailed, chronology of the litigation and legislation relating to the Real Estate Transfer Tax Act lends needed perspective.

The Real Estate Transfer tax Act became effective January 1, 1968. (Ill. Rev. Stat. 1967, ch. 120, par. 1001 *et seq.*) (statute I). Section 3 of the Real Estate Transfer Tax Act provided for a tax on the privilege of transferring title to real estate at the rate of 50 cents for each $500 value or fraction thereof. The tax was to be collected by the recorder of deeds or registrar of titles of the several counties through the sale of revenue stamps which would be sold to the counties by the Department of Revenue for 25 cents (the first 25 cents). The second 25 cents was to be retained by the county; to-wit:

> "The net proceeds from such sale by the Recorder of Deeds or Registrar of Titles shall be treated *as a fee of his office.*" (Emphasis added.) Ill. Rev. Stat. 1967, ch. 120, par. 1003.

Because of this language, section 3 was declared unconstitutional in *Saltiel v. Olsen* as a violation of article VII, section 9 of the Illinois Constitution. (Ill. Rev. Stat. 1977, ch. 120, par. 1003; *Saltiel v. Olsen* (1979), 77 Ill. 2d 23; Ill. Const. 1970, art. VII, sec. 9.) Article VII, section 9 of the Illinois Constitution provided that fees shall not be based upon funds disbursed or collected nor upon the levy or extension of taxes. (Ill. Const. 1970, art. VII, sec. 9.) Statute I was amended by the legislature, before *Saltiel* was decided, by Public Act No. 80—1334, effective August 7, 1978, thus creating statute II (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003). The legislature's apparent purpose in enacting statute II was to correct its constitutional infirmity, since it added only the phrase underlined in the excerpt below:

> "The net proceeds from such sale by the Recorder of Deeds or Registrar of Titles shall be treated as *the distribution of the tax which is herein authorized to be charged and collected.*" (Emphasis added.) Ill. Rev. Stat., 1978 Supp., ch. 120, par. 1003.

Statute II was in effect for nine months from August 7, 1978, until May 17, 1979, the effective date of Public Act No. 81—10, which deleted the sentence which was added by amendment in Statute II and made major changes in the structure of the tax.

Effective August 16, 1982, the legislature enacted Public Act 82—918. More readily identified as the "forgiveness statute", it provided,

in pertinent part:

> "Pursuant to the preceding findings and declaration, the unliquidated debts of the several counties to the State for monies retained by the counties under the Real Estate Transfer Tax Act from the sale of tax stamps on and after December 1, 1971, the effective date of section 9 of article VII of the Illinois Constitution of 1970, and before August 7, 1978, the effective date of Public Act 80—1334, are cancelled and forgiven." Public Act 82—918 at 2170.

The forgiveness statute was amended, effective August 15, 1983, by Public Act 83—57, which the Hoffmans and Kern seek to challenge here. The only effect of Public Act No. 83—57 was to extend the period of forgiveness to included moneys retained by the counties during the period August 7, 1978 (which was the original cut-off date), to July 15, 1979. Ill. Ann. Stat., ch. 120, par. 1001 (Smith-Hurd Supp. 1985).

The first and second of the *Schlessinger I, II, III* and *IV* quartet, *Schlessinger v. Olsen* (1980), 89 Ill. App. 3d 583 and *Schlessinger v. Olsen* (1981), 86 Ill. 2d 314, were concerned primarily with the procedural chronology of a motion to dismiss vis-a-vis a motion for class certification. The substance of the Schlessinger claim was finally addressed and decided in *Schlessinger III* (*Schlessinger v. Olsen* (1982), 107 Ill. App. 3d 302), to-wit: that Public Act 80—1334 was merely a cosmetic change to the Real Estate Transfer Tax Act and that it still suffered from the constitutional infirmity found in *Saltiel*.

> " '[T]he collection by one governmental entity of a tax due to a different entity has been regarded as a fee imposed by the former, rather than as a distribution of tax revenues after they have been collected. [Citations.].' *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 27." *Schlessinger v. Olsen* (1982), 107 Ill. App. 3d 302, 308-09.

It was after this decision in *Schlessinger III* that the Hoffmans filed their initial complaint on October 7, 1982, seeking refunds for those who had paid the transfer tax during the period August 7, 1978 (the effective date of statute II), through May 16, 1979, the day before the effective date of Public Act 81—10 (statute III).

Meanwhile, *Schlessinger III* was being considered on remand to the circuit court of Cook County. In its memorandum opinion, the circuit court noted that the appellate court's decision in *Schlessinger III* had effectively defeated the legislative purpose of the Act by denying the second 25 cents to the county. Thus, it found the Real Estate Transfer Tax Act invalid in its entirety. Moreover, it considered that

since the forgiveness statute (Public Act 82—918) stood as an affirmative expression by the legislature which disavowed the State's entitlement to the second 25 cents, it was apparent to the court "that those collections [of the transfer tax] should never have been made and that as between the State and the taxpayer the money must go back to those who have paid it." (Schlessinger v. Olsen (circuit court of Cook County April 6, 1983) No. 78 CH 8524 memorandum op. at 5.) The circuit court found that only plaintiff Schlessinger, who actually paid the transfer tax, was the proper class representative as against the State and Portia Kern, who purported to represent the class of State taxpayers. The circuit court's decision was appealed directly to the supreme court.

At about this same time, the county here filed its appeal, prematurely as it turns out, directly to the supreme court from the trial court's grant of partial summary judgment in the Hoffmans' favor on the issue of liability; i.e., that statute II was unconstitutional. This partial order was filed September 22, 1983, about one month after the forgiveness statute was amended by Public Act 83—57. Also on September 22, 1983, the court agreed to certify the class represented by the Hoffmans as being all persons who paid the real-estate transfer tax during the period between August 7, 1978 and May 17, 1979, and, lastly, denied the county's motion for summary judgment. Although the Hoffmans prepared an order certifying the class as described above for the court's signature, the county's premature appeal to the supreme court intervened, and the court never signed the order.

The supreme court's decision in the *Schlessinger IV* case appeared in slip opinion form on May 25, 1984. Several weeks prior to that, on May 4, 1984, Portia Kern filed her petition to intervene in this cause as a representative of all State taxpayers. As such, this petition was filed almost a year after the Cook County circuit court rejected her proposed State-taxpayer class, and certified as the class those taxpayers who had actually paid the real-estate transfer tax. Contrary to assertions made here, the supreme court did consolidate Lake County's appeal in the instant cause with that of the Cook County appellants below in *Schlessinger IV*, since "each case involves the disposition of tax monies collected under [Statute II] which was in effect from August 7, 1978, to May 17, 1979." (*Schlessinger v. Olsen* (1984), 102 Ill. 2d 497, 499.) Notably, the supreme court did not find that the Real Estate Transfer Tax Act was invalid in its entirety, nor did it find that the State and its taxpayers lacked standing in the cause. (102 Ill. 2d 497, 502.) It distinguished taxes improperly diverted from those improperly collected, and noted that *Schlessinger III* invalidated sec-

tion 3 as amended by Public Act 80—1334 only because the county was allowed to retain a percentage of the taxes it collected, and not because the imposition of the tax was considered unconstitutional. Accordingly, it held that the diversion cases were dispositive and held that funds unlawfully diverted to Cook County should be deposited in the general revenue fund of the State treasury. (*Schlessinger v. Olsen* (May 25, 1984), Nos. 58581, 59169, slip. op. at 4.) Later, on September 28, 1984, upon denial of Schlessinger's petition for rehearing, the supreme court modified its opinion to reflect the existence of public Act 83—57 (the amendment to the forgiveness statute), and ordered that the funds in controversy be delivered to the appropriate Cook County officers. *Schlessinger v. Olsen* (1984), 102 Ill. 2d 497, 503.

During the time between the supreme court's issuance of its slip opinion and its modified opinion in *Schlessinger IV*, the State moved on July 9, 1984, to intervene in the cause here. On July 20, 1984, the county moved the court to reconsider its prior partial summary judgment in favor of the Hoffmans and its denial of its motion to dismiss. Its motion directed against intervention by the State and Kern was filed on July 24, 1984, and those parties' responses, and the county's reply, were all filed prior to the supreme court's ruling on the Schlessinger petition for rehearing.

Reacting to the supreme court's modified opinion, the county here filed its amended motion to reconsider on October 2, 1984, and asked the court to dismiss the cause against it since the supreme court had determined that the debt of the several counties had been canceled by virtue of Public Act 83—57. On October 22, 1984, the court denied Kern's petition to intervene, granted the State's petition to intervene, and ordered the Hoffmans to reply to the county's motion to reconsider and to dismiss.

In the way of a response, on November 7, 1984, the Hoffmans filed their motion for leave to file their amended complaint, as noted above, to include a cause of action for declaratory judgment that Public Act 83—57 was unconstitutional, and seeking disgorgement to the State. Kern followed suit on November 12 with her motion to reconsider her petition for leave to intervene, and included a proposed amendment to her complaint to include the allegation that Public Act 83—57 was unconstitutional in violation of Article I, section 16, article VII, section 9, and article VIII, section 2 of the Illinois Constitution. The instant appeals were later brought from the trial court's rulings on those various motions.

■ We find no manifest abuse of discretion in the trial court's denial of Hoffmans' request to amend their complaint. It is clear that

the gravamen of the Hoffmans' claim was that they and others who had actually paid the transfer tax were entitled to repayment of the moneys retained by Lake County during the period statute II was in effect. At the time the Hoffmans' initial complaint was filed, October 7, 1982, the legislature had already enacted Public Act 82—918, the forgiveness statute, thereby canceling the unliquidated debts of the several counties during the period December 1, 1971 (the effective date of section 9 of article VII of the 1970 Illinois Constitution), and August 7, 1978 (the effective date of Public Act 80—1334). Further, at the time the Hoffmans' initial complaint was filed on October 7, 1982, the court's opinion in *Schlessinger III* (*Schlessinger v. Olsen* (1982), 107 Ill. App. 3d 302) had been filed on June 8, 1982, finding that Public Act 80-1334 made a "cosmetic" rather than a substantive change to the Real Estate Transfer Tax Act and, thus, statute II still suffered from the constitutional infirmity found in *Saltiel*. The Hoffmans did not seek to amend their complaint until November 7, 1984, after *Schlessinger IV* (*Schlessinger v. Olsen* (1984), 102 Ill. 2d 497) was filed on May 25, 1984, and later modified on September 28, 1984. The *Schlessinger IV* decision was unfavorable to Hoffmans' initial claim: first, in that it found that the State, not the actual transfer taxpayers, was entitled to the funds improperly diverted to the counties and, second, that the debts of the several counties resulting from the retention of State moneys collected prior to July 15, 1979, under the invalid provisions of the Real Estate Transfer Tax Act were canceled by virtue of Public Act 83—57 and, consequently, the counties could retain the funds.

It is clear the Hoffmans' proposed amendments were drafted to avoid the unfavorable effect of *Schlessinger IV* on their intended claim. The amendments proposed would not have enabled them to "sustain the claim" for which their action was intended to be brought; *i.e.*, that they were entitled to refund of the transfer tax paid. Further, the original enactment of the forgiveness statute preceded the Hoffmans' initial complaint; their proposed challenge to Public Act 83—57, which only extended the period of debt cancellation, would not have constituted a timely challenge to the substance of the statute. In view of the advanced stage of the proceedings at which the amendments were proposed, timeliness and prejudice to the' county were factors which the court may have considered primary in denying the Hoffmans leave to amend. We conclude the trial court did not abuse its discretion in so denying the motion for leave to amend.

In denying the Hoffmans leave to amend and dismissing their initial complaint, the court found that the issue of the disposition of

funds collected under Public Act 80—1334 (statute II), was raised and decided against the State and State taxpayers in *Schlessinger IV* and, thus, was *res judicata* as to the Hoffmans' cause. Further, the court found the mitigating factors discussed in *Board of Commissioners v. County of Du Page* (1984), 103 Ill. 2d 422 (*Wood Dale II*), were present in this case also and that it would be inequitable to require Lake County to disgorge the funds collected under statute II to the State while Cook County was permitted to retain them under the result reached in *Schlessinger IV*. Essentially these same factors were relied upon by the trial court in granting the county's motion for summary judgment against the State on its intervening complaint.

The Hoffmans argue it was error for the court to have dismissed their initial complaint on the basis *Schlessinger IV* was dispositive of it. They point out that although their initial complaint sought refunds to the taxpayers who actually paid the unconstitutionally collected tax, it also sought "such other and further relief as may, in the premises, be deemed appropriate." Thus, they claim disgorgement to the State taxpayers is "covered by" their initial complaint and even if they may have sought an inappropriate remedy, they should not thereby be deprived of their "meritorious claim."

The county's position is that the Hoffmans either had no standing to maintain the instant action since *Schlessinger IV* found that it was the State which was entitled to the transfer tax revenues in the absence of Public Act 83—57 and the Hoffmans had made no "demand" on the State, or that the Hoffmans were collaterally estopped by reason of *Schlessinger IV* from bringing the action.

■ Although a prior judgment may have preclusive effects in a subsequent action under both *res judicata* and collateral estoppel, we find neither of these doctrines applicable to the Hoffmans. These two doctrines were discussed in *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246; 251-52:

> "The doctrine of *res judicata* provides that 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action.' (Emphasis added.) (*People v. Kidd* (1947), 398 Ill. 405, 408.) When *res judicata* is established 'as a bar against the prosecution of a second action between the same parties upon the same claim or demand *** it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that pur-

pose. [Citations.]' *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 478.

The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling act or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. (See *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7.) The adjudication of the fact or question 'in the first cause will, if properly presented, be conclusive of the same question in the later suit' (*Hoffman v. Hoffman* (1928), 330 Ill. 413, 417 ), but 'the judgment in the first suit operates as an estoppel only as to the point or question *actually litigated* and determined and not as to other matters which might have been litigated and determined.' (Emphasis added.) *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 427; see also *Grip-Pak, Inc. v. Illinois Tool Works, Inc.* (7th Cir. 1982), 694 F.2d 466, 469, *cert. denied* (1983), 461 U.S. 958, 77 L. Ed. 2d 1317, 103 S. Ct. 2430."

The Hoffmans were not parties or privies of plaintiff Schlessinger or her class; *i.e.*, "[a]ll those who paid the transfer tax pursuant to the terms of Statute II to the defendant Sidney R. Olsen." Schlessinger v. Olsen (circuit court of Cook County April 6, 1983), No. 78 CH 8524, memorandum op. at 8.

■ ▌ We find, however, that the trial court's dismissal of the Hoffmans' initial complaint amounted to simple adherence to the doctrine of *stare decisis*; that is, "that a question once deliberately examined and decided be considered as settled and closed to further argument" (*Landfield v. Altman* (1960), 23 Ill. App. 2d 404, 406). A basic tenet of our legal system, the doctrine of *stare decisis* provides " '[w]here the Supreme Court has declared the law on any point, it alone can overrule and modify its previous action, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases.' *Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27." (*Panchinsin v. The Enterprise Companies* (1983), 117 Ill. App. 3d 441, 444.) Although *stare decisis* is not universally applicable to all situations without exception (*Neff v. George* (1936), 364 Ill. 306), " '[s]tare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.' " *Marathon Oil Co. v. Briceland* (1979), 75 Ill. App. 3d

189, 192.

Schlessinger III (Schlessinger v. Olsen (1982), 107 Ill. App. 3d 302) determined the question of constitutionality of Public Act 80—1334, and the question "deliberately examined and decided" in Schlessinger IV was "the disposition of tax monies collected under [Public Act 80—1334 (statute II)] which was in effect from August 7, 1978, to May 17, 1979" (Schlessinger v. Olsen (1984), 102 Ill. 2d 497, 499). The court's decision in Schlessinger IV decided that as between those who paid the tax and the State, it was the State which was entitled to the tax revenues. Even if the Hoffmans' prayer for general relief—which has been referred to as " 'the best prayer next to the Lord's prayer' " (VanZanten v. VanZanten (1915), 269 Ill. 491, 497)—may be said to have encompassed disgorgement to the State, Schlessinger IV made it clear that the indebtedness of the several counties had been canceled and forgiven by virtue of Public Act 83—57. As such, the Hoffmans' initial complaint failed to set forth a cause of action against the county for repayment or disgorgement of the tax revenues, and dismissal was proper. See Landfield v. Altman (1960), 23 Ill. App. 2d 404.

The Hoffmans' initial complaint did not challenge Public Act 82—918, the first enacted forgiveness statute, although it was in effect at the time the action was filed. Further, because the court denied the Hoffmans leave to amend their complaint—correctly so we believe as discussed above—the trial court never considered the constitutionality of Public Act 83—57, the amendment to the forgiveness statute, which simply extended the period during which the unliquidated debts "of the several counties" to the State would be canceled and forgiven. In light of our decision here that dismissal of the Hoffmans' initial complaint was proper under the stare decisis doctrine, and that denial of leave to amend their complaint was not an abuse of the court's discretion, we likewise do not reach the issue of the constitutionality of Public Act 83—57. In this regard, we note that it is settled that new legislation may be applied in pending cases. Public Act 83—57 became effective August 15, 1983, during the pendency of Schlessinger IV. "In the absence of legislative intent to the contrary, a court is to apply the law in effect at the time of decision, unless to do so results in manifest injustice." (General Telephone Co. v. Johnson (1984), 103 Ill. 2d 363, 383.) The legislative intent underpinning the forgiveness statute as enacted and as amended by Public Act 83—57 was explicit, as was the scope of its application. We note here, as well, a point advanced by the State in its brief that there is no express limitation on the legislature's ability to forgive or cancel a debt in the 1970 Illinois

Constitution, although there was such a provision in the 1870 Constitution. (Ill. Const. 1870, art. IV, sec. 23.) That section has no counterpart in the 1970 Illinois Constitution.

The plaintiffs (Hoffmans and Kern) argue that the court erred in its application of the law and the facts in reaching its conclusion that the mitigating factors discussed in *Board of Commissioners v. County of Du Page* (1984), 103 Ill. 2d 422 (*Wood Dale II*), were present in the case at bar. They assert "[t]his court can and should overrule the lower court to decide that plaintiffs are entitled to retroactive disgorgement [of the tax revenues retained] as a matter of law."

Plaintiffs point out that in *Wood Dale II*, the Illinois Supreme Court found that prior to *Wood Dale I* (1982), 107 Ill. App. 3d 409, *aff'd* (1983), 96 Ill. 2d 378), there was no indication that article VII, section 9(a), applied to the practice of retaining interest earned on moneys collected. The *Wood Dale II* court noted three factors which were to be considered in deciding whether to give a decision in a civil case prospective application only. In essence, they were (1) whether the decision established a new principle of law and a party's reliance on existing law; (2) whether the history, purpose, and effect of the rule in question would be furthered or retarded by retrospective operation; and (3) whether retroactive application would produce substantial inequity. *Board of Commissioners v. County of Du Page* (1984), 103 Ill. 2d 422, 426-27.

In contrast here, plaintiffs argue, the county was "on notice" that article VII, section 9(a), did apply to the retention of funds actually collected, by virtue of cases such as *Flynn v. Kucharski* (1971), 49 Ill. 2d 7, *County of Lake v. X-Po Security Police Service, Inc.* (1975), 27 Ill. App. 3d 750, *City of Joliet v. Bosworth* (1976), 64 Ill. 2d 516, *Goldstein v. Rosewell* (1976), 65 Ill. 2d 325, and by virtue of the complaint and injunction in the *Saltiel* case during the first half of 1978, and the filing of the complaint in *Schlessinger I* in September 1978. Plaintiffs contend that the basis of the doctrine of prospective relief is that there was reliance on an overruled precedent and that because they were not permitted to even allege that Public Act 83—57 was unconstitutional, no precedent has been overruled, and they should not be denied retroactive disgorgement of the funds retained by the county.

Plaintiff's argument concerning reliance on overruled precedent is incorrectly premised on Public Act 83—57. That act was not the enactment upon which the county relied in retaining the tax revenues in question here; it was section 3 of the Real Estate Transfer Tax Act as amended by Public Act 80—1334. (Ill. Rev. Stat., 1978 Supp., ch. 120,

par. 1003.) As noted previously, the Real Estate Transfer Tax Act was enacted in 1967; no challenge to section 3 of that act was made until the *Saltiel* complaint was filed in Cook County in February 1978, and an injunction was issued in June 1978. During pendency of the appeal in that case, the legislature enacted Public Act 80—1334, effective August 7, 1978. Still before *Saltiel* was decided, the *Schlessinger I* complaint challenging Public Act 80—1334 was filed in Cook County in September 1978. Still pending the *Saltiel* decision, and while the various procedural and class-certification questions in *Schlessinger* were being examined, the legislature enacted Public Act 81—10, effective May 17, 1979, which made major changes in the structure of the Real Estate Transfer Tax Act. The last date upon which the county "relied" upon section 3 to retain a percentage of the tax revenues was May 16, 1979.

The county's reliance on the original and amended versions of section 3 of the Real Estate Transfer Tax Act was not found to have been misplaced until *Saltiel* was finally decided in September 1979 and *Schlessinger III* was decided in June 1982. The *Flynn, X-Po, Joliet,* and *Goldstein* cases which plaintiffs argue should have put the county "on notice" did not concern the constitutionality of section 3 of the Real Estate Transfer Tax Act.

We find persuasive the county's argument as to the second and third factors to be considered in whether to give prospective or retrospective application to *Schlessinger IV* and, by necessary implication, to *Saltiel* and *Schlessinger III*. The legislature's enactment and subsequent amendment of the forgiveness statute is a clear indication that retrospective operation of these decisions would only retard the purpose and effect of the rule in question, section 3 of the Real Estate Transfer Tax Act. Further, retrospective application of these decisions to force the county to disgorge the tax revenues to the State would produce substantial inequitable results where Cook County is allowed to retain such tax revenues under the decision in *Schlessinger IV*. Accordingly, we reject plaintiffs' argument that they are entitled to retroactive disgorgement of the tax revenues.

Lastly, we find the trial court did not abuse its discretion in denying petitioner Kern leave to intervene or in refusing to reconsider its denial of leave to intervene and leave to file an amended complaint.

Petitioner Kern sought leave to intervene on behalf of the State taxpayers and the Attorney General sought leave to intervene on behalf of the State of Illinois and the Department of Revenue. It seems apparent the court's judgment to deny Kern leave to intervene was

not based on considerations of timeliness, since the State's petition was filed after Kern's. Further it is evident that at the time the Hoffmans' initial complaint and each of the petitions to intervene were filed, the constitutionality of the amendment to section 3 of the Real Estate Transfer Tax Act by Public Act 80—1334 had been decided in *Schlessinger III* and, thus, the "validity of a constitutional provision, statute or regulation of this State" (Ill. Rev. Stat. 1983, ch. 110, par. 2—408(c)) was not determinatively in issue. Significantly, by the time the State filed its petition to intervene, the Illinois Supreme Court's slip opinion in *Schlessinger IV* had issued, directing that the tax revenues retained by the defendants there must be deposited into the general revenue fund of the State of Illinois. Consequently, the State's intervention here sought to ensure that the tax revenues validly collected but improperly diverted would likewise be deposited in the general revenue fund, rather than refunded to the class of transfer taxpayers represented by the Hoffmans.

The Department of Revenue is an agency of the State of Illinois, and the Attorney General is the chief legal officer of the State of Illinois and legal adviser and representative of its departments and agencies (*Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority* (1983), 98 Ill. 2d 58; *Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394). The Attorney General is charged with the constitutional, statutory and common law duty to safeguard the public interest of the people of Illinois (Ill. Const. 1970, art. V, sec. 15; Ill. Rev. Stat. 1983, ch. 14, par. 4), and is the only officer empowered to represent the State in litigation in which it is the real party in interest (*People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485; *Fuchs v. Bidwill* (1976), 65 Ill. 2d 503). Intervention is a matter within the sound discretion of the trial court and its judgment will not be disturbed absent a clear abuse of discretion. (*University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872.) We find no such clear abuse of discretion in the court's allowing the State rather than petitioner Kern to intervene in order to represent the public interest and the Department of Revenue.

We also find no abuse of the court's discretion in denying Kern's petition to reconsider its denial of intervention and leave to amend her complaint to include a challenge to the constitutionality of Public Act 83—57. Kern clearly was a party to the *Schlessinger IV* litigation and her attempt to raise the issue of the constitutionality of Public Act 83—57 in the instant cause clearly amounted to an impermissible collateral attack on that judgment. " 'A judgment rendered by a court having jurisdiction of the parties and the subject matter,

unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding ***.' (49 C.J.S. *Judgments* sec. 401, (1947).)" *Malone v. Cosentino* (1983), 99 Ill. 2d 29, 32.

Accordingly, for the reasons expressed above, we affirm the judgments of the circuit court of Lake County.

Judgments affirmed.

NASH, P.J., and HOPF, J., concur.